## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZAGAFEN BALA, LLC, | : | CIVIL ACTION |
| VK TAVERN, LLC, VINTAGE | : | |
| KOSHER, LLC, and REAL | : | NO. |
| FRESH, INC., D/B/A PAGANO'S | : | |
| RESTAURANT & BAR, Individually and | : | |
| on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TWIN CITY FIRE INSURANCE | : | CLASS ACTION |
| COMPANY, | : | |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiffs Zagafen Bala, LLC ("Zagafen"), VK Tavern, LLC ("Tavern"), and Vintage

Kosher, LLC ("Vintage Kosher") (together "Zagafen Plaintiffs"), and Real Fresh, Inc., d/b/a

Pagano's Restaurant & Bar ("Pagano's") (collectively, "Plaintiffs"), on behalf of themselves and

all others similarly situated, brings this class action, pursuant to Rule 23 of the Federal Rules of

Civil Procedure, against Defendant Twin City Fire Insurance Company ("Twin City"), a subsidiary

of Hartford Financial Group, Inc. ("Hartford"), arising from the denial of insurance coverage.

Plaintiffs allege the following based on personal knowledge as to Plaintiffs and Plaintiffs' own

acts, and on information and belief as to all other matters based upon the investigation of Plaintiffs'

counsel and their review of publicly available information, including news articles, press releases,

and other publicly available information.

## NATURE OF THE ACTION

1.     Plaintiff Zagafen owns a kosher dairy restaurant by that name, Plaintiff Tavern owns a kosher meat restaurant known as Citron & Rose, and Plaintiff Vintage Kosher operates a kosher wine and spirits shop.  All Zagafen Plaintiffs are located in Montgomery County, Pennsylvania.

2.     Pagano's, a "food emporium" in Center City Philadelphia, offers breakfast and lunch each day, Monday to Friday, with a gourmet café, live entertainment and a full bar.  In addition to the food and drinks made and sold on premises, Pagano's also offers corporate catering to local area businesses.

3.     Plaintiffs' futures have all been threatened by the government-ordered shutdowns prohibiting on-site dining at restaurants, as well as operation of nonessential businesses, which prevent patrons' and employees' access to their facilities and denies the use of their property for their intended purpose.

4.     To protect their businesses in the event that they suddenly had to suspend operations for reasons outside of their control, Plaintiffs purchased Business Owner's coverage from Twin City.  The Business Owner's policies included separate endorsements for "Business Income and Extra Expense" (the "Business Income endorsement") and Business Income for Civil Authority Actions (the "Civil Authority endorsement").

5.     Plaintiffs were forced to suspend or reduce business at their location due to orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-site services to prevent potential exposure to COVID-19.  Plaintiffs were also required to take necessary steps to prevent further damage and minimize the suspension of business and continue

2

operations.  Plaintiffs' insured premises did not experience any known presence of, suspected presence of, or exposure to the COVID-19 virus.

6.      Plaintiffs made timely claims but were denied business income coverage by Twin City.  Upon information and belief, Twin City, as well as its parent Hartford, has, on a wide-scale and uniform basis, refused to pay its insureds for losses suffered due to any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

## THE PARTIES

7.      Zagafen Plaintiffs are each Pennsylvania limited liability companies, organized under the laws of Pennsylvania, with their principal place of business in Montgomery County, Pennsylvania, and each of the shareholders of each of the Zagafen Plaintiffs are citizens of Pennsylvania.

8.      Plaintiff Pagano's is a corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

9.      Defendant Twin City is a property and casualty company organized under the laws of the State of Connecticut and with its headquarters and principal place of business at One Hartford Plaza, Hartford, Connecticut.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendant.  The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Twin City, as it is registered to conduct business in and regularly conducts business in Pennsylvania, and has sufficient contacts in Pennsylvania.  Twin City intentionally avails itself of this jurisdiction by conducting operations here and promoting, selling, and marketing its policies of insurance to resident Pennsylvania consumers and entities.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District and the Plaintiffs' insured properties that are the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

### A.     The Twin City Policies

13.     In return for the payment of a premium, Twin City issued Policy No. 44 SBA BA1920 DW to the Zagafen Plaintiffs for a policy period of December 15, 2019 to December 15, 2020, which is attached as Exhibit A.

14.     In return for the payment of a premium, Twin City issued Policy No. 14 SBA BL8180 DV to Pagano's for a policy period of April 24, 2019 to April 24, 2020, which is attached as Exhibit B.

15.     Plaintiffs have performed all of their obligations under their respective policies, including the payment of premiums.

16.     The Covered Property and Scheduled Premises of Zagafen Plaintiffs are 261 and 368-370 Montgomery Avenue, Merion Station, Pennsylvania.

17.     Pagano's Covered Property and Scheduled Premises are 2001 Market Street, Philadelphia PA  19103.

18.     Plaintiffs' Twin City policies included a Special Property Coverage Form, Form SS 00 07 07 05.  It provided for coverage as follows:

**Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property. . . within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

This Special Property Coverage Form further provides:

This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

19.     This Special Property Coverage Form also provides coverage for:

**Extra Expense**

(1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property … within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

20.     This Special Property Coverage Form defines Extra Expense as:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i)     At the "scheduled premises"; or

(ii)    At replacement premises or at temporary locations…

21.     The Special Property Coverage Form provides that Twin City will pay for Extra Expenses that occurs within 12 consecutive months after the date of direct physical loss or physical damage, and this Additional Coverage is not subject to the Limits of Insurance.

5

22.     This form also provides that the insurance extends to loss of business income caused by the exercise of Civil Authority prohibiting access to the insured premises or adjacent areas as a result of a Covered Cause of Loss.

23.     The Business Income and Extra Expense extensions provided within these endorsements include payment for lost business income, normal operating expenses incurred (including payroll expenses), extended business income during a period of restoration, and extra expenses for expenses that would not have been incurred but for the loss or damage.

24.     The policies' Business Income and Civil Authority endorsements contain no exclusion for losses caused by governmental orders issued in order to prevent exposure to a virus, and no other exclusion in the policies apply to this coverage.

25.     Instead, the Twin City policy has an endorsement for "Limited Fungi, Bacteria or Virus Coverage," Form SS 40 93 07 05.  This endorsement provides for up to $50,000.00 in coverage for "direct physical loss or direct physical damage caused by … a virus."

**B.     The Covered Cause of Loss**

26.     Efforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential businesses and preventing citizens from leaving home for non-essential purposes (the "Closure Orders").

27.     Plaintiffs' businesses are not considered "essential," and have therefore been subject to a variety of Closure Orders by state and local authorities, preventing Plaintiffs from operating their businesses, limiting their operations, and/or from use of the covered premises for their intended purpose.

28.     These Closure Orders include, but are not limited to, Pennsylvania Governor Wolf's order dated March 19, 2020 requiring all non-life-sustaining businesses in the

Commonwealth to cease operations and close all physical locations.[1]  The Pennsylvania Supreme Court recently clarified that the Governor's order has resulted in the temporary loss of use of non-essential business premises effected by the order, and that the order was issued to protect the lives and health of millions of Pennsylvania citizens.  *See Friends of DeVito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100 at *17 (Pa. Apr. 13, 2020).

29.    There was no presence of the COVID-19 virus at Plaintiffs' Covered Properties. Rather, Plaintiffs experienced a "Covered Cause of Loss" by virtue of the Closure Orders which denied use of the Covered Properties by causing a necessary suspension of operations during a period of restoration. The closure orders operate as a blockade that prevents employees and patrons from entering the businesses for their intended purpose.

30.    This Covered Cause of Loss triggered coverage pursuant to the coverage extensions of the policies' Business Income endorsement.  The Business Income coverage extension provides coverage "for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'.  The suspension must be caused by direct physical loss or direct physical damage to property. . .  caused by or resulting from a Covered Cause of Loss."  The Extended Business Income coverage extension further provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that "property is actually repaired, rebuilt or replaced and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 30 days.  The Extra Expense coverage extension covers reasonable and necessary extra expenses

---

[1] *Available at* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order.

incurred by the insured during the "period of restoration," that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property.

31.     Consistent with the provisions of the policies' Civil Authority endorsements, the "Covered Cause of Loss" also caused a direct physical loss or damage to property *other* than at Plaintiffs' Scheduled Premises, triggering coverage under the policies' Civil Authority coverage extension.  The coverage extension provides payment for actual loss of Business Income incurred when access to "'scheduled premises' is specifically prohibited by order of a civil authority."

32.     None of Twin City's policy exclusions apply to Plaintiffs' claims for coverage.

33.     The Special Property Coverage Form's limitation on or exclusion of virus is not applicable as Plaintiffs' Covered Cause of Loss is not the virus, but rather the effect of the Closure Orders as the presence or absence of the COVID-19 virus would have no effect upon the closure or the loss of business inasmuch as the stay at home orders apply to all non-essential businesses regardless of their exposure to the virus.

34.     No other exclusions listed in the policies are applicable.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

36.     Plaintiffs seek to represent nationwide classes defined as

> (i) All persons and entities that: (a) had Business Income, Extended Business Income, and Extra Expense coverage under a property insurance policy issued by Twin City; (b) suffered a suspension of business related the Closure Orders, at the premises covered by Twin City's property insurance policy; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Business Income coverage by Twin City for the suspension of business resulting from the Closure Orders (the "Business Income Breach Class").

8

(ii) All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Twin City; (b) suffered loss caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Civil Authority coverage by Twin City for the loss caused by a Closure Order (the "Civil Authority Breach Class").

(iii) All persons and entities with Business Income, Extended Business Income, and Extra Expense coverage under a property insurance policy issued by Twin City that suffered a suspension of business due a Closure Order at the premises covered by the Business Income coverage (the "Business Income Declaratory Judgment Class").

(iv) All persons and entities with Civil Authority coverage under a property insurance policy issued by Twin City that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

37.     Alternatively, Plaintiffs seek to represent subclasses corresponding to the above class definitions above but limited to persons and entities to the extent they were or are doing business in Pennsylvania.

38.     Excluded from each defined class and subclass is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and any governmental entities.  Plaintiffs reserve the right to modify or amend each of the class definitions, as appropriate, during the course of this litigation.

39.     This action has been brought and may properly be maintained on behalf of each class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

40.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined class or subclass are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each class and hundreds of members of each subclass, the precise number of class or subclass members is unknown to Plaintiffs but may be ascertained from Defendant's books and records.

Class and subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

41.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual class or subclass members, including, without limitation:

a.    whether the class or subclass suffered a covered loss based on the common policies issued to members of the class or subclass;

b.    whether Twin City wrongfully denied all claims based on the wrongful application of one or more policy exclusions;

c.    whether Twin City's Business Income coverage applies to a suspension of business caused by a Closure Order;

d.    whether Twin City's Extended Business Income coverage applies to a suspension of business caused by a Closure Order;

e.    whether Twin City's Extra Expense coverage applies to a suspension of business caused by a Closure Order;

f.    whether Twin City's Civil Authority coverage applies to a loss of Business Income caused by a Closure Order;

g.    whether Twin City has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to the Closure Orders; and

h.    whether Plaintiffs and the class or subclass are entitled to an award of reasonable counsel fees, interest and costs.

42.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other class or subclass members' claims because Plaintiffs and the other class or subclass members are all similarly affected by Defendants' refusal to pay under its Business Income, Extended Business Income, Extra Expense, or Civil Authority coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other class or subclass members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

43.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate class or subclass representatives because their interests do not conflict with the interests of the other class or subclass members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined classes or subclasses will be fairly and adequately protected by Plaintiffs and their counsel.

44.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Extended Business Income, Extra Expense, and Civil Authority coverages. The prosecution of separate actions by individual members of the classes or subclasses would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants.

45.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other class

or subclass members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the class or subclass members.

46.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT –
### BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

47.     The averments of paragraphs 1-46 above are incorporated as if fully set forth herein.

48.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class.

49.     Plaintiffs' policies, as well as those of the other Business Income Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Breach Class members' losses for claims covered by the policy.

50.     In the Business Income and Extra Expense endorsement, Twin City provided Business Income, Extended Business Income, and Extra Expense coverage extensions.

51.     Twin City agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

52.     A "partial slowdown or complete cessation" of business activities at the Scheduled Premises is a "suspension" under the policy, for which Twin City agreed to pay for loss of Business Income during the "period of restoration," as well as continuing normal operating expenses incurred, including payroll expenses.

53.      "Business Income" means net income (or loss) before tax that Plaintiffs and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred."

54.     The Extended Business Income coverage extension provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that "property is actually repaired, rebuilt or replaced and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 30 days.

55.     The Extra Expense coverage extension provides for payment of reasonable and necessary Extra Expense an insured incurs during the "period of restoration" that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property at the Scheduled Premises.

56.     The Closure Orders caused direct physical loss and damage to Plaintiffs and the other Business Income Breach Class members' Scheduled Premises, requiring suspension of operations at the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the Business Income provision of Plaintiffs' and the other Business Income Breach Class members' policies.

57.     Defendant has breached its contract to provide Extended Business Income Coverage and Extra Expense coverage to Plaintiffs and the other Business Income Breach Class members.

58.     Plaintiffs and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

59.     By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class members, Twin City has breached its coverage obligations under the policies.

60.      As a result of Twin City's breaches of the policies, Plaintiffs and the other Business Income Breach Class members have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

## COUNT II
## BREACH OF CONTRACT –
## BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Pennsylvania Business Income Breach Subclass)

61.     The averments of paragraphs 1-60 above are incorporated as if fully set forth herein.

62.     Plaintiffs bring this Count individually and on behalf of the other members of the Pennsylvania Business Income Breach Subclass.

63.     Plaintiffs' policies, as well as those of the other Pennsylvania Business Income Breach Subclass members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiffs and the other Pennsylvania Business Income Breach Subclass members' losses for claims covered by the policy.

14

64.     In the Business Income and Extra Expense endorsement, Twin City provided Business Income, Extended Business Income, and Extra Expense coverage extensions.

65.     Twin City agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

66.     A "partial slowdown or complete cessation" of business activities at the Scheduled Premises is a "suspension" under the policy, for which Twin City agreed to pay for loss of Business Income during the "period of restoration," as well as continuing normal operating expenses incurred, including payroll expenses.

67.     "Business Income" means net income (or loss) before tax that Plaintiffs and the other Pennsylvania Business Income Breach Subclass members would have earned "if no physical loss or damage had occurred."

68.     The Extended Business Income coverage extension provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that "property, other than finished 'stock', is actually repaired ... and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 30 days.

69.     The Extra Expense coverage extension provides for payment of reasonable and necessary Extra Expense an insured incurs during the "period of restoration" that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property at the Scheduled Premises.

70.     The Closure Orders caused direct physical loss and damage to Plaintiffs and the other Business Income Breach Class members' Scheduled Premises, requiring suspension of operations at the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the

15

Business Income provision of Plaintiffs' and the other Pennsylvania Business Income Breach Subclass members' policies.

71.     Defendant has breached its contract to provide Extended Business Income Coverage and Extra Expense coverage to Plaintiffs and the other Pennsylvania Business Income Breach Subclass members.

72.     Plaintiffs and the other Pennsylvania Business Income Breach Subclass members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

73.     By denying coverage for any Business Income losses incurred by Plaintiffs and the other Pennsylvania Business Income Breach Subclass members, Twin City has breached its coverage obligations under the policies.

74.     As a result of Twin City's breaches of the policies, Plaintiffs and the other Pennsylvania Business Income Breach Class members have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT –**
**CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

75.     The averments of paragraphs 1-74 above are as if fully set forth herein.

76.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

77.     Plaintiffs' policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to

16

pay Plaintiffs and the other Civil Authority Breach Class members' losses for claims covered by the policy.

78.     In the Business Income for Civil Authority Actions endorsement, Twin City agreed to pay for its insureds' actual loss of Business Income incurred due to the necessary suspension of its operations when access to "'scheduled premises' is specifically prohibited by order of a civil authority."

79.     The Closure Orders caused direct physical loss and damage to property *other* than Plaintiffs and the other Civil Authority Breach Class members' Scheduled Premises, resulting in a prohibition of access to the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the Business Income for Civil Authority Actions provision of Plaintiffs' and the other Civil Authority Breach Class members' policies.

80.     Plaintiffs and the other Civil Authority Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

81.     By denying coverage for any Civil Authority losses incurred by Plaintiffs and the other Civil Authority Breach Class members, Twin City has breached its coverage obligations under the policies.

82.      As a result of Twin City's breaches of the policies, Plaintiffs and the other Civil Authority Breach Class members have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

## COUNT IV
## BREACH OF CONTRACT –
## CIVIL AUTHORITY COVERAGE
**(Claim Brought on Behalf of the Pennsylvania Civil Authority
Breach Class)**

83.      The averments of paragraphs 1-82 above are as if fully set forth herein.

84.      Plaintiffs bring this Count individually and on behalf of the other members of the
Pennsylvania Civil Authority Breach Subclass.

85.      Plaintiffs' policies, as well as those of the other Pennsylvania Civil Authority
Breach Subclass members, are contracts under which Twin City was paid premiums in exchange
for its promise to pay Plaintiffs and the other Civil Authority Breach Class members' losses for
claims covered by the policy.

86.      In the Business Income for Civil Authority Actions endorsement, Twin City agreed
to pay for its insureds' actual loss of Business Income incurred when access to "'scheduled
premises' is specifically prohibited by order of a civil authority."

87.      The Closure Orders caused direct physical loss and damage to property *other* than
Plaintiffs and the other Pennsylvania Civil Authority Breach Subclass members' Scheduled
Premises, resulting in a prohibition of access to the Scheduled Premises.  Losses caused by the
Closure Orders thus triggered the Business Income for Civil Authority Actions provision of
Plaintiffs' and the other Pennsylvania Civil Authority Breach Subclass members' policies.

88.      Plaintiffs and the other Pennsylvania Civil Authority Breach Subclass members
have complied with all applicable provisions of their policies and/or those provisions have been
waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has
abrogated its insurance coverage obligations.

18

89.     By denying coverage for any Civil Authority losses incurred by Plaintiffs and the other Pennsylvania Civil Authority Breach Subclass members, Twin City has breached its coverage obligations under the policies.

90.      As a result of Twin City's breaches of the policies, Plaintiffs and the other Pennsylvania Civil Authority Breach Subclass members have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT –**
**BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

91.     The averments of paragraphs 1-90 above are incorporated as if fully set forth herein.

92.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

93.     Plaintiffs' policies, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

94.     Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

95.     Twin City has denied claims related to Coverage Orders on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

96.     An actual case or controversy exists regarding Plaintiffs' and the other Business Income Declaratory Judgment Class members' rights and Twin City's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

97.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.   Plaintiffs and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders are insured losses under their policies; and

b.   Twin City is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

**COUNT VI**
**DECLARATORY JUDGMENT –**
**BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Pennsylvania Business Income Declaratory Judgment Subclass)**

98.     The averments of paragraphs 1-97 above are incorporated as if fully set forth herein.

99.     Plaintiffs bring this Count individually and on behalf of the other members of the Pennsylvania Business Income Declaratory Judgment Subclass.

100.    Plaintiffs' policies, as well as those of the other Pennsylvania Business Income Declaratory Judgment Subclass members, are contracts under which Twin City was paid premiums

in exchange for its promise to pay Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members' losses for claims covered by the policy.

101.   Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

102.   Twin City has denied claims related to Coverage Orders on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

103.   An actual case or controversy exists regarding Plaintiffs' and the other Pennsylvania Business Income Declaratory Judgment Subclass members' rights and Twin City's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members in connection with suspension of their businesses in connection with the Closure Orders.

104.   Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members seek a declaratory judgment from this Court declaring the following:

   a.   Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members' Business Income losses incurred in connection with the Closure Orders are insured losses under their policies; and

   b.   Twin City is obligated to pay Plaintiffs and the other Pennsylvania Business Income Declaratory Judgment Subclass members for the full amount of the Business

Income losses incurred and to be incurred in connection with the Closure Orders

during the period of restoration and the necessary interruption of their businesses.

**COUNT VII**
**DECLARATORY JUDGMENT –**
**CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory**
**Judgment Class)**

105.    The averments of paragraphs 1-104 above are incorporated as if fully set forth

herein.

106.    Plaintiffs bring this Count individually and on behalf of the other members of the

Civil Authority Declaratory Judgment Class.

107.    Plaintiffs' policies, as well as those of the other Civil Authority Declaratory

Judgment Class members, are contracts under which Twin City was paid premiums in exchange

for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class

members' losses for claims covered by the policy.

108.    Plaintiffs and the other Civil Authority Declaratory Judgment Class members have

complied with all applicable provisions of their policies and/or those provisions have been waived

by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its

insurance coverage obligations.

109.    Twin City has denied claims related to Coverage Orders on a uniform and class

wide basis, without individual bases or investigations, such that the Court can render declaratory

judgment irrespective of whether members of the Class have filed a claim for coverage.

110.    An actual case or controversy exists regarding Plaintiffs' and the other Civil

Authority Declaratory Judgment Class members' rights and Twin City's obligations under the

policies to reimburse Plaintiffs for the full amount of Business Income and Extra Expense losses

22

incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

111.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses incurred in connection with the Closure Orders are insured losses under their policies; and

b.  Twin City is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of the covered losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

**COUNT VIII**
**DECLARATORY JUDGMENT –**
**CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Pennsylvania Civil Authority**
**Declaratory Judgment Class)**

112.    The averments of paragraphs 1-111 above are incorporated as if fully set forth herein.

113.    Plaintiffs bring this Count individually and on behalf of the other members of the Pennsylvania Civil Authority Declaratory Judgment Subclass.

114.    Plaintiffs' policies, as well as those of the other Pennsylvania Civil Authority Declaratory Judgment Subclass members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

23

115.    Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Subclass members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City, or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

116.    Twin City has denied claims related to Coverage Orders on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Subclass have filed a claim for coverage.

117.    An actual case or controversy exists regarding Plaintiffs' and the other Pennsylvania Civil Authority Declaratory Judgment Subclass members' rights and Twin City's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income and Extra Expense losses incurred by Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

118.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Subclass members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Subclass members' losses incurred in connection with the Closure Orders are insured losses under their policies; and

b.  Twin City is obligated to pay Plaintiffs and the other Pennsylvania Civil Authority Declaratory Judgment Subclass members for the full amount of the covered losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

24

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other class and subclass members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.      Entering an order certifying the proposed nationwide classes and Pennsylvania subclasses, as requested herein, designating Plaintiffs as class representatives, and appointing Plaintiffs' undersigned attorneys as counsel for the classes;

b.      Entering judgment on Counts I-VI in favor of Plaintiffs and the members of the Business Income Breach Class and Pennsylvania Subclass and the Civil Authority Breach Class and Pennsylvania Subclass, and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Counts VII-VIII in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class and Pennsylvania Subclass and the Civil Authority Declaratory Judgment Class and Pennsylvania Subclass as follows:

i.      Business Income, Extended Business Income, Extra Expense, and Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses are insured losses under their policies; and,

ii.      Twin City is obligated to pay for the full amount of the Business Income, Extended Business Income, Extra Expense, and Civil Authority losses incurred and to be incurred related to the Closure Orders and the necessary interruption of their businesses;

d.      Ordering Defendant to pay both pre- and post-judgment interest at the maximum amount allowed by law on any amounts awarded;

25

e.      Ordering Defendants to pay attorneys' fees, reasonable expenses and costs of suit; and

f.      Ordering such other additional and different relief as the interests of justice or equity may require.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of twelve as to all issues stated herein, and all issues so triable.


Dated:  June 23, 2020                    **BARRACK, RODOS & BACINE**

                              By:____s/ Jeffrey A. Barrack_____
                                   Daniel E. Bacine (PA 16742)
                                   Mark R. Rosen (PA 31231)
                                   Jeffrey A. Barrack (PA 78438)
                                   Meghan J. Talbot (PA 322308)
                                   3300 Two Commerce Square
                                   2001 Market Street
                                   Philadelphia, PA 19103
                                        and
                                   Stephen R. Basser
                                   One America Plaza
                                   600 W. Broadway, Suite 900
                                   San Diego, CA 92101

                                   *Attorneys for Plaintiffs*