# EXHIBIT 2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

_____

GAVRILIDES MANAGEMENT COMPANY,

               Plaintiff,

vs.                         File No. 20-258-CB

MICHIGAN INSURANCE COMPANY,

       Defendant.

_____/


        DEFENDANTS MOTION FOR SUMMARY DISPOSITION
  BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE
       LANSING, MICHIGAN – WEDNESDAY, JULY 01, 2020


APPEARANCES:

For the Plaintiff:          Matthew J. Heos-P73786
                         3452 East Lake Lansing Road
                         East Lansing, Michigan 48823
                         517-256-4240


For the Defendant:          Henry Emrich-P29948
                         2025 East Beltline Avenue SE-#600
                         Grand Rapids, Michigan 49546
                         616-285-0143


Recorded/transcribed by:    Susan C. Melton, CER 7548
                         Certified Electronic Reporter
                         (517) 483-6500 x6703

```
                          TABLE OF CONTENTS


WITNESSES                                          PAGE

None.




EXHIBITS

None admitted.
```

| | |
|---|---|
| 1 | Lansing, Michigan |
| 2 | Wednesday, July 01, 2020 |
| 3 | 2:58:57 PM |
| 4 | THE COURT: This is, pardon me if I massacre |
| 5 | this, Gavri--, Gavrilides Management Company, et al versus |
| 6 | Michigan Insurance Company, docket number 20-258-CB. And |
| 7 | this is the time set for Defendant Michigan Insurance |
| 8 | Company's Motion for Summary Disposition. And just for the |
| 9 | record, could I have your appearances, please? |
| 10 | MR. HEOS: Yes, your Honor. Matthew Heos and Nick |
| 11 | Gavrilides is here in the courtroom also with me. He is |
| 12 | the owner of the immediate plaintiff company's. |
| 13 | MR EMRICH: Henry Emrich on behalf of Michigan |
| 14 | Insurance Company, your Honor and my assistant Chenney |
| 15 | Ward. |
| 16 | THE COURT: Okay, thank you. And your motion, Mr. |
| 17 | Emrich, if you wish to go ahead. |
| 18 | MR. EMRICH: Thank you, your Honor. I am going to |
| 19 | assume that the Court has read all of the pleadings in |
| 20 | this case, so I'll try not to belabor some of the points. |
| 21 | I think the, the key fact that we need to focus on is that |
| 22 | as we've argued is that there's no question here but the |
| 23 | policies that insure Mr. Gavrilides properties against, |
| 24 | against direct physical loss or damage to the property and |
| 25 | contrary, any claim with the policy benefits in question |

3

1  this business income coverage is illusory, the policy in

2  question here clearly provides that for the business

3  coverage, the business income coverage to apply and, and

4  most of the other primary coverages under their policy,

5  there must be a direct physical loss of or damage to the

6  insured property in order for it to apply.

7          And I think it's important as we'll discuss

8  later in our argument depending on what Mr. Heos has to

9  say, why this is important, we must focus on the fact that

10 there must be direct physical loss or damage to the

11 insured property and not direct physical loss of use of or

12 damage to the property as has been suggested by Mr.

13 Gavrilides and his attorney in order for the coverage at

14 issue to apply.

15         While I acknowledge, your Honor, that this is a

16 somewhat unique, extraordinary if you will, matter to be

17 filing at this point in the proceedings as our initial

18 pleading; I think it's important to understand that when

19 we look at Mr. Gavrilides complaint, it does not contain

20 one single allegation that this insured property has in

21 any way been damaged or lost.  To the contrary, the

22 allegations in the complaint affirmatively allege that the

23 plaintiff business interruption claim is based on the

24 "Stay at Home" orders of Governor Whitmer.  There is no

25 allegation of any kind that the property in question has

4

1    in any way been damaged, lost or anything of the sort.

2            Given that this motion has been brought under

3    2.116(c)(10), plaintiff must produce some evidence to

4    contradict the uncontroverted facts that have been alleged

5    not only in the complaint, but in the affidavit submitted

6    Mr. Gavrilides and in any of the other materials that Mr.

7    Heos has attached to his response as, as indicated, most

8    importantly, the affidavit of Mr. Gavrilides that

9    reiterates the admissions in the complaint that there has

10   not been any loss of or damage to either of the properties

11   for which they seek coverage.

12           The insureds property today exists in the very

13   same condition as it existed the day prior to the

14   effective date of the "Stay at Home" order.  They have not

15   been lost, they have not been damaged, they have not

16   required any repairs because of any damage to those

17   properties. The business operation, its, its operation as

18   a restaurant today is, is the same as the day prior to the

19   effective date of the order, albeit with some modifi-

20   cations that had been required to avoid grouping and to

21   maintain social distancing in, in a sense improvements to

22   the real estate.  Not repairs, you know, and, and it's

23   been maintained as a take-out, take-out operation at least

24   until recently when they resumed the dining operation.

25   There has been no loss of or damage to either building

5

1       that has prevented the plaintiff from operating as a

2       restaurant or entering it for that matter if--, as they

3       have. If plaintiffs wanted to sell either building today,

4       they could do so. And while plaintiffs have provided some

5       speculative evidence about the decreased value of that

6       property, although, as I read Mr.--, as I read the

7       materials that Mr. Heos kindly attached to his response,

8       the fact of the matter is it pointed out in that article

9       was that while they operation of a commercial property may

10      get harder, it's not impossible to operate it in the

11      future under our new normal.

12              Because plaintiffs complaint, the affidavit, the

13      other information that has been provided to your Honor

14      provides no evidence of any damage to that property.

15      Plaintiffs could never prove that either property suffered

16      any direct physical loss from the imposition of Governor

17      Whitmer's emergency order.  And thus, could never recover

18      business interruption coverage under this policy based on

19      the facts that have been presented to the Court. The same

20      holds true under the business cover, income coverage, if a

21      civil authority prevents or prohibits access to either

22      property because of direct physical damage to an adjacent

23      or nearby property for the very same reason.  There has

24      been no direct physical loss or damage to any adjacent

25      property that has been alleged, that has been provided to

6

1    the Court in Mr. Heos response. And frankly, when you look

2    at the order that they have, that is at issue in this

3    case, there's nothing there that prevents access to Mr.

4    Gavrilides properties whatsoever.

5            In summary, your Honor, there are no facts

6    alleged in the complaint or in any of the materials that

7    I've looked at, including Mr. Gavrilides affidavit, that

8    shows there has been direct physical loss of or damage to

9    the insured property. And for those reasons, your Honor,

10    we believe that our motion--, for those reasons alone, we

11    believe our motion for summary disposition should be

12    granted.

13            I'd just like to make a couple of additional

14    points before I shut up. I really believe summary

15    disposition is warranted on this basis alone and I would

16    turn the Court to the case that we've discussed in our, in

17    our brief, your Honor, that's referred to Universal

18    Insurance Production versus Chubb. And that's the decision

19    of the Eastern District of Michigan involving a claim that

20    involved insured property. It was damaged by a pervasive

21    odor that developed in the property as a result of mold

22    that grew in the property because of some water seepage.

23    And why that case is important is because it discusses the

24    Michigan Rules of Contract Interpretation, that still

25    apply today, policy language is clear and unambiguous on

1    its face, which we believe is clearly the case here that

2    states that the words and the terms of the policy should

3    be enforced utilizing plain and commonly understood

4    meanings.

5              And when I said earlier that that's important

6    when we talk about what direct physical loss of or damage

7    to property means, it means we look at those words. We

8    don't add words such as loss of use, that Mr. Heos and Mr.

9    Gavrilides have added in order to understand what we're

10   talking about here. We look at the language in the policy.

11   Every case that Mr. Heos produced your Honor, says the

12   very same thing. In Univer--, Universal, like here, the

13   policy was an 'all-risk' policy that required, like here,

14   direct physical loss or damage to the insured property in

15   order to trigger coverage unless that coverage was

16   excluded.

17             As Universal pointed out, applying a dictionary

18   meaning of direct and physical as meaning something

19   immediate or proximate as a premise to something that is

20   distant or incidental and physical meaning something that

21   has a material existence meant in the context of a loss

22   involving a contaminant that, unlike here, per the uncon-

23   troverted allegations of the complaint and other evidence

24   produced by plaintiff in response to this motion. That in

25   order for direct physical loss of the property in this

8

| | |
|---|---|
| 1 | context, the contaminant must actually alter the structure |
| 2 | integrity of the property in order to trigger coverage |
| 3 | under language that is at issue in this case. And it |
| 4 | didn't happen in Universal, as the Court denied coverage |
| 5 | there, granted affirmed summary disposition. And |
| 6 | importantly your Honor, it hasn't even been alleged in |
| 7 | this case. Regardless of any authority to the contrary, |
| 8 | anywhere else in the country, this remains the law in our |
| 9 | courts when interpreting policy terms at issue. There is a |
| 10 | requirement that there be direct physical loss of or |
| 11 | damage to property. And the allegations produced here in |
| 12 | the complaint and the evidence that's been attached have |
| 13 | specifically acknowledged no such contamination and no |
| 14 | such damage to the property as a result of that contami- |
| 15 | nation. |
| 16 | As in Universal, your Honor, the mere presence |
| 17 | of odor or even mold was not any evidence of structural or |
| 18 | tangible damage to the insured property. And as such, no |
| 19 | direct physical loss or damage to the property had-, was |
| 20 | occurred. Here, your Honor, we have the very same thing |
| 21 | except that we have not even had any allegations of any |
| 22 | damage to the property caused by this unfortunate, this |
| 23 | horrible virus. |
| 24 | Finally, and although we do not believe the |
| 25 | Court even has to get to this point, even if we assume for |

9

1   purposes of this motion that contamination occurred on
2   each premises and that somehow effected the structural
3   integrity of either building, again, neither scenario is
4   alleged. And even if it were, we do not believe under the
5   circumstances and the science that exists that it would
6   necessarily constitute direct physical loss over damage to
7   the property. The buyer's exclusion of the policy, which
8   clearly and unequivocally states that it applies to all
9   coverages and endorsement and that the company will not
10  pay for loss or damages caused by or resulting from any
11  virus, bacteria or other microorganism that induces or is,
12  is capable of inducing physical distress, illness or
13  disease. And Lord knows, that that has certainly been the
14  case with what's happened with Covid-19 throughout our
15  country.

16          Clearly, your Honor, that exclusion, again, I
17  don't believe you even have to get there, but that
18  exclusion would clearly exclude any claim here even if
19  plaintiff's could prove direct physical loss of or damage
20  to the insured property or any nearby property that
21  resulted in a civil authority issuing an order prohibiting
22  access to the property. As of eight days ago, your Honor,
23  they have only been few jurisdictions in this country,
24  Florida and Pennsylvania, that have discussed and applied
25  this, a similar exclusion as at issue in this case and in

10

|   |   |
|---|---|
| 1 | every one of those cases, the Court has enforced that |
| 2 | exclusion as written because it's clear and unambiguous. |
| 3 | Again, your Honor, for all the reasons that we've set |
| 4 | forth here today and the brief that we filed and our |
| 5 | reply, we request that the Court grant our Motion for |
| 6 | Summary Disposition at this time. Thank you. |
| 7 | THE COURT: Thank you. Mr. Heos? |
| 8 | MR. HEOS: Thank you, your Honor and may it |
| 9 | please the Court. And obviously Mr. Emrich and I have a |
| 10 | different interpretation of direct physical loss of or |
| 11 | damage to covered properties because here the loss comes |
| 12 | from the issue of the executive order restricting use of |
| 13 | property. Physically you cannot use for, for dine-in |
| 14 | services any of the interior of the building for a period |
| 15 | of time. And a complete prohibition isn't contemplated by |
| 16 | the language of the contract, I think a limited |
| 17 | restriction also falls within the coverage. And I think |
| 18 | that if you're gonna accept the defendants argument you |
| 19 | would have to limit the meaning to destruction of the |
| 20 | physical building itself, but we know that the coverage |
| 21 | extends to non-destructive loss, civil authority being |
| 22 | one. |
| 23 | I put in example in the brief subterranean |
| 24 | pollution, you can look at asbestos or a computer virus is |
| 25 | something that would occur that there would be no physical |

11

|    | destruction to the property itself. The fact of the matter |
| -- | -- |
| 1  | is that Mr. Gavrilides can't use the covered properties |
| 2  | because of or he's lost rather the use of those properties |
| 3  | because of the order and it looks like that will continue |
| 4  | in some form for a while. So, I think that counsel is |
| 5  | wrong in trying to limit the scope even with the case law |
| 6  | he cited, most of which is persuasive and not binding. |
| 7  | That's number one, Judge. |
| 8  |  |

1  destruction to the property itself. The fact of the matter

2  is that Mr. Gavrilides can't use the covered properties

3  because of or he's lost rather the use of those properties

4  because of the order and it looks like that will continue

5  in some form for a while. So, I think that counsel is

6  wrong in trying to limit the scope even with the case law

7  he cited, most of which is persuasive and not binding.

8  That's number one, Judge.

9  And as for the virus exclusion itself, the only

10  case law we have relates to person to person transmission

11  of a virus at the covered property. And I think that fits

12  more with what's going on. We see in the news that Harpers

13  in East Lansing and even the Hotcat in Kalamazoo is making

14  headlines of people contracting Covid there. But, the

15  impetus of the order was to protect public health and

16  welfare, which is the governor's duty. It's not caused by

17  a virus. It would be the same order as with the damn in

18  Midland being issued to protect public health and welfare.

19  It wasn't caused by a flood. It was caused by the

20  Governor's duty to act and protect the people she's

21  charged with protecting and I think that's what happening.

22  Or it's distinguishable from the case and I

23  think it's Bowler, the case cited regarding the virus. And

24  I think that if you go further in accepting defendant's

25  position, then we get into the illusory promise of well if

12

1    the government issues an order, we're not gonna cover it
2    because any decision of a government body or group of
3    people is excluded. And so then, you get into the circle
4    in the contract where if you're going to buy into counsels
5    logic, it would make that provision illusory. And for
6    those reasons, I think that the motion should actually
7    roll back on the defendants because the language to
8    support the claim, to the extent that the Court thinks
9    there's a deficiency in my pleading and is gonna grant
10   defendants motion, I'd like Leave to Amend the Complaint.
11   But, I don't think that's the case here. And with that,
12   I'll leave it, if the Court would like to ask any
13   questions, I'm happy to take them.

14              THE COURT: I don't have any. Thank you. I'll
15   give Mr. Emrich rebuttal time.

16              MR. EMRICH: Thank you, your Honor. Your Honor,
17   what I would say is that when we talk about these cases
18   that Mr. Heos has mentioned that might provide coverage in
19   certain situations, I read those cases a little while ago
20   and I'm kind of tired reading some of these cases about
21   insurance coverage. But, the point in every one of those
22   cases is that the condition she referred to actually
23   caused damage to the property.

24              In this case, there has not been any such
25   damage. And if we look at what the coverage for business

13

loss or business--, the business income loss that they're seeking says, it says that if the business, the coverage would apply if the business operation is suspended provided the suspension must be caused by the direct physical loss of or damage to property. In this case, that hasn't occurred. Nothing prevents Mr. Gavrilides from using that property. It has been used as such. The fact that there may be other coverages that may provide some limited coverage, they're against what Mr. Heos is arguing because clearly, if those coverages were covered under this language, then why have a special coverage that provides certain conditions for its application.

The point is, in each of those civil authority cases that he talked about, the property actually sustained damage. Here it didn't sustain damage. As to his claim in this case, that he wants an opportunity to amend his complaint if the Court feels compelled to grant my motion, what is that going to accomplish? He's already alleged in his complaint and his client has already signed an affidavit where he no doubt put his hand up and swore to the contents of that affidavit in which he said there has been no damage to that property.

We don't create coverage by-, because somebody thinks they ought to have coverage. But, that, that, that whole line of cases Roy versus Continental Insurance and

14

some of the other cases in our, in our brief that we cited, clearly supports the notion that the reasonable expectation concept doesn't apply in Michigan. It just doesn't cut it. There is no coverage here, your Honor. That exclusion is clear. If the Court feels that there may be or that there may be a situation that would give rise to, but again, you have to come forward at the time that you, that you respond to this motion with some evidence that suggests that. That hasn't happened here. I mean even when you look at the response that he's filed, he talks about scenario's that have absolutely no bearing to this case.

And you know, I'll just make one last point, your Honor, you know, when I was a young Prosecutor, I had the benefit of being able to argue a number of cases to juries that required me to prove the defendant's guilt beyond a reasonable doubt. And in those cases, I was trained to listen closely to the defendant's argument and had been the case where the facts were particularly egregious, a defense attorney would often not even talk about those facts and talk about the law. And he talked about how that law was somehow created this reasonable doubt in hopes of creating some confusion on the part of one juror who might then find in his clients favor because reasonable doubt existed. And, and in those cases, I would

15

1    make sure that when I got up in rebuttal, just as I have
2    been given the opportunity to here, I would point that out
3    to the jury and indicate to them that there's a reason for
4    that. And that's because they didn't want you to talk
5    about the facts that clearly supported conviction.

6         On the other hand, if it was a case where the
7    law, you know, or the facts may have been murky, but the
8    law was clear, the defense attorney would only focus on,
9    you know, on those facts and not talk about the law. And
10   again, I point that out to the jury there.  But, in this
11   case, you know, and there were cases back then to, like
12   our case here that were neither supported by the facts or
13   the law. Which I believe is clearly the case in this case.
14   And the defense attorney would get up and argue something
15   that to the jury that had absolutely nothing to do with
16   the case in hopes of confusing them. Just like Mr. Heos
17   has suggested by talking about these asbestos cases or
18   some of these other cases that have nothing to do with
19   this.

20        Well in this case, when you look at his
21   responsive pleading, he talks about an accident situation
22   that has absolutely no application here. Nothing to do
23   with this case. While in his argument, he starts out
24   talking about a discussion of the virus of racism and as
25   there, as there, we would point out, if we were in front

16

1   of a jury, just like I'd point out to them and I'm

2   pointing out to you, it hasn't got anything to do with

3   this case. Your Honor, the reason for that and the reason

4   for the topic of that is that he knows that neither the

5   facts or the law support his claim and nothing he could

6   file as an amendment would change that.

7       He is hoping to somehow create this little bit

8   of possibility, some scintilla that some evidence is gonna

9   pop up that shows that the property has been damaged in

10  hopes that he could trigger coverage. And as this Court

11  knows under the cases we've discussed in our brief, that

12  is not sufficient to deny summary disposition in a case

13  that clearly warrants it even at this early stage.

14      Thank you your Honor for your patience. Thank

15  you Mr. Heos, we've never met. I've heard a lot of good

16  things about you. Mr. Gavrilides, nice to have met you,

17  very sorry for the situation you're in. It's just crazy

18  all the way around. And just like having to argue this

19  case on TV is really just disconcerting for me.  But, in

20  any event, thank you your Honor for your patience.

21              THE COURT: Thank you. You're on Youtube not TV.

22  But--

23              MR. EMRICH: I meant screen.  Yeah, whatever.

24              THE COURT: Right.

25              MR. EMRICH: The screen.

17

THE COURT: I, I did read the briefs. I studied
them very carefully and I've listened to the argument of
counsel today. And taking all the-, that together I, I
note that the plaintiff speaks of and focuses on arguments
about access to the property, use of the property and
definitions of loss and damage. But, the first inquiry has
to start with a full look, not just isolating some words
or phrases from the policy. But, a full look at the
coverage that's provided under the policy.

Coverage is provided for actual loss of business
income sustained during a suspension of operations. The
policy goes on to provide the 'suspension must be caused
by direct physical loss of or damage to property.' And it
also provides 'the loss or damage must be caused by or
result from a covered cause of loss. The causes of loss
special form provides that a covered cause of loss means
risks of direct physical loss.'

So, whether we're talking about the cause for
the suspension of the business or the cause for the loss
or the damage, it is clear from the policy coverage
provision only direct physical loss is covered. Under
their common meanings and under federal case law as well,
that the plaintiff has cited that interprets this standard
form of insurance, direct physical loss of or damage to
the property has to be something with material existence.

1    Something that is tangible. Something according to the one

2    case that the plaintiff has cited from the Eastern

3    District, that alters the physical integrity of the

4    property.  The complaint here does not allege any physical

5    loss of or damage to the property. The complaint alleges a

6    loss of business due to executive orders shutting down the

7    restaurants for dining, for dining in the restaurant due

8    to the Covid-19 threat.

9           But, the complaint also states that a no time

10   has Covid-19 entered the Soup Spoon or the Bistro through

11   any employee or customer and in fact, states that it has

12   never been present in either location. So, there simply

13   are no allegations of direct physical loss of or damage to

14   either property. The plaintiff seems to make in the

15   briefing, at least, two arguments about the language in

16   the coverage provision and what it means.

17          The first argument is that the plaintiff says

18   coverage applies to "direct physical loss or damage to

19   property."  Even if that were the wording of the coverage

20   provision, it wouldn't save the plaintiff from the

21   requirement that the loss or damage must be physical and

22   the analysis could end right there. But, I have to go on

23   to say that this is not even the wording of the coverage

24   provision. Coverage according to the policy applies to a

25   suspension caused by "direct physical loss of or damage to

19

property." So, I'm not going to get into a detailed analysis of the rules of grammar. But, common rules of grammar would apply to make that phrase a short-cut way of saying "direct physical loss of property or direct physical damage to property." So, again, the plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e., physical damage to the property.

Then the plaintiff in the briefing, at least, seems to make a second argument that and this is not 100% clear, but, it seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services. But, that argument is just simply nonsense. And it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building.

So, the next argument that the plaintiff makes is that the virus and bacteria exclusion is vague and can't apply here. The plaintiff has not adequately explained how the term virus is vague. And in fact, supplies a completely workable, understandable, usable definition of the word virus. The argument in this regard really seems to be more that the virus exclusion doesn't

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | apply. And it goes something like this as far as I can       |
| 2  | tell, first, a virus can't cause physical loss or damage     |
| 3  | to property because virus' harm people, not property.        |
| 4  | Second, the damage caused here was really caused by          |
| 5  | actions of the civil authority to protect public health.     |
| 6  | And then third, therefore, coverage for acts of any          |
| 7  | person, group, organization or governmental body applies.    |
| 8  | But, that argument bring us right back to the direct         |
| 9  | physical loss or damage requirement. Again, going back to    |
| 10 | the cause of loss special form B, as in boy, exclusions      |
| 11 | provides that acts of government are only covered when       |
| 12 | they result in a covered cause of loss. A covered cause      |
| 13 | of loss, again, is direct physical loss. So, even if the     |
| 14 | virus exclusion did not apply, which the plaintiff has not   |
| 15 | supported that it doesn't apply, I only argue that it's      |
| 16 | vague, which I reject. But, even if it did not apply, it     |
| 17 | could only be coverage for governmental actions that         |
| 18 | resulted in direct physical loss or damage.                  |
| 19 | And then, finally, the plaintiff argues that the             |
| 20 | policy has a contradiction in it that renders it illusory.   |
| 21 | So, the plaintiff says that the policy extends coverage      |
| 22 | for governmental acts. But, then, it takes it away in the    |
| 23 | causes of loss special form. But, that's simply not true.    |
| 24 | Coverage is provided for actual loss of business income      |
| 25 | sustained during the suspension of operations. However,      |

21

according to the coverage provision, the suspension must

be caused by direct physical loss of or damage to

property. And governmental acts are likewise covered if

it results in a covered cause of loss, which is again, a

direct physical loss. There is no granting of coverage

and then excluding the same coverage in the policy. As a

matter of fact, the policy is consistent throughout and

consistent with federal law cited by the plaintiff. It

requires physical loss or damage.

There is a virus exclusion even if plaintiff was

alleging, was alleging, even if there were allegations in

the complaint alleging actual physical loss or damage,

which the complaint does not do. But, there is a virus

exclusion that would also apply. And governmental action

that results in direct physical loss is covered. But

again, there is no direct physical loss alleged here.

Now, I have to address a little bit this, that

it was brought as a (c)(10) motion. The actually the

defendant hasn't provided any support by way of factual

support, depositions, affidavits, et cetera, for a (c)(10)

motion. So, if the defendant doesn't do that, then the

plaintiff has no burden under Maiden versus Rosewood. So,

there's no shifting burden until the moving party first

does it. But, I don't think it properly is labeled a

(c)(10) motion. I think it's a (c)(8) motion. Because this

1    is the motion that can be decided as a matter of law. Take

2    all the allegations in the complaint as true and examine

3    nothing more than the contract upon which the complaint is

4    based, the policy of insurance and as a matter of law, the

5    plaintiffs complaint cannot be sustained. And although the

6    plaintiff has requested a chance to amend without any

7    indication of how they would do that, there actually is no

8    factual development that could change the fact that the

9    complaint is complaining about the loss of access or use

10   of the premised due to executive orders and the Covid-19

11   virus crisis. So, there's no factual development that

12   could possibly change that or amendment to the complaint

13   that could possibly change that those things do not

14   constitute the direct physical damage or injury that's

15   required under the policy as I've outlined.

16            So, for those reasons, I am granting the

17   Defendant's Motion for Summary Disposition. I'm doing it

18   under MCR 2.116 (c)(8). And Mr.—

19            MR. EMRICH: Thank you, your Honor.

20            THE COURT: Mr. Emrich, will you submit an order?

21            MR. EMRICH: Certainly will, your Honor.

22            THE COURT: Okay.

23            MR. EMRICH: Thank you.

24            THE COURT: Thank you.

25            MR. HEOS: Thank you very much.

23

1          THE COURT: That will conclude our hearing.

2                  (Hearing concludes at 3:32:35 PM.)

3

4

5

6

7

8

9

10      STATE OF MICHIGAN)

11                        )

12      COUNTY OF INGHAM)

13

14

15

16      I certify that that this transcript, consisting of 24

17  pages, is a complete, true, and correct transcript of the

18  proceedings and testimony taken in this case on Wednesday,

19  July 01, 2020.

20

21

22  July 09, 2020          _____
23                              Susan C. Melton-CER 7548
24                              30th Circuit Court
25                              313 West Kalamazoo Avenue
26                              Lansing, Michigan 48901
27                              517-483-6500 ext. 6703

28

24