# EXHIBIT 3

1    THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            FOR THE COUNTY OF MONTEREY

3                               <span style="color:red">CERTIFIED COPY</span>

4  _____
    The Inns by the Sea          )
                          )

5    vs.                     ) CASE NO. 20CV001274
                          )

6    California Mutual Insurance   )
    Company                 )

7  _____)

8

          REPORTER'S TRANSCRIPT OF PROCEEDINGS

9

             MONDAY, AUGUST 4, 2020

10

     BEFORE THE HONORABLE LYDIA M. VILLARREAL, JUDGE

11

12

13   APPEARANCES:

14   FOR PLAINTIFF:        SAM FERGUSON
    (APPEARING ON COURT CALL)  ATTORNEY AT LAW

15

                          MICHAEL J. REISER

16                       ATTORNEY AT LAW

17

18   FOR DEFENDANT:        RYAN Z. KELLER
    (APPEARING ON COURT CALL)  ATTORNEY AT LAW

19

                          STEVEN HAYES

20                       ATTORNEY AT LAW

21

22

23

24   REPORTED BY:   JAMIE L. SETTERQUIST CSR 13362
                OFFICIAL COURT REPORTER

25                MONTEREY COUNTY SUPERIOR COURT

```
 1        MONTEREY, CA; Monday, August 6, 2020; 9:24 A.M.

 2

 3                      P R O C E E D I N G S

 4              THE COURT:  Inns by the Sea versus California

 5        Mutual Insurance Company.

 6              MR. KELLER:  Good morning Your Honor.  Ryan

 7        Keller on the phone for Defendant, California Mutual

 8        Insurance Company.  I also have Steven Hayes from my

 9        office on the phone.

10              THE COURT:  I appreciate you doing it, but

11        it's easier for me if I do it.  Sam Ferguson for Inns by

12        the Sea?

13              MR. FERGUSON:  Good morning.  Sam Ferguson for

14        Inns by the Sea.

15              THE COURT:  Thank you very much.  Steven Hayes

16        for California Mutual?

17              MR. HAYES:  Good morning, your Honor.

18              THE COURT:  And who is going to be speaking on

19        behalf of California Mutual?  Will it be Mr. Hayes or

20        Mr. Keller?

21              MR. KELLER:  Mr. Keller, your Honor.

22              THE COURT:  Thank you very much.  Mr. Keller

23        on behalf of The Inns by the Sea.

24              MR. REISER:  Good morning, your Honor.

25        Michael Reiser.
```

THE COURT:  And who will be speaking on behalf

of plaintiffs?

                    MR. FERGUSON:  Sam Ferguson of the Meade Law

Firm will be speaking on behalf of Inns by the Sea as

plaintiffs.

                    THE COURT:  All right.  Thank you so much.  So

I have gone over what you filed, and let me just start

by saying the economic damage caused by COVID is just

heartbreaking, and this case is yet one more of the

heartbreak.

                    There are two things that are of concern to

me.  It seems to me that the language of the policy

supported the defendant's position that it talks about

the business suspension must be caused by direct

physical loss of or damage to property at the premises,

and it seems that the cases for the most part are --

seek to address some sort of physical destruction or

physical change in usefulness, and I am not sure that

COVID creates that physical change.

                    Now, what I think gives me pause is that I am

trying to understand the other cases that have been

referenced by the plaintiffs, and that is that smoke

damage is considered physical damage, persistent E. Coli

infestation is physical, gasoline vapors are physical,

carbon monoxide saturation is physical, and certainly

1    large quantities of asbestos in the air is considered

2    physical.

3           So I am just wondering whether or not COVID is

4    enough like these other things such that it should be

5    covered.

6           So that is sort of my thoughts, and let me

7    just start with Mr. Ferguson.

8           MR. FERGUSON:  Thank you, your Honor.  To

9    directly address your concerns here, I think there is an

10   important way we can view all of the cases you mentioned

11   of smoke damage, E. Coli, gas vapors, carbon monoxide,

12   and one way to view those cases is view the atmosphere

13   in the air within the insured property as part of the

14   physical premises of the property.  I think this is

15   exactly what the *Oregon Shakespeare* case does, which as

16   you mentioned the case of smoke infestation of the

17   *Oregon Shakespeare Festival*, and one way to think about

18   coronavirus, there is actually a contamination of the

19   air within the physical spaces that results in a change

20   on the molecular level of the composition of the air and

21   space.

22          What these cases hold is that when there is a

23   physical change or when there is a physical invasion of

24   a harmful substance that renders a space functionally

25   useless, you have direct physical loss of or damage to

1    property within insurance coverage.

2           And now, your Honor, I certainly sympathize

3    with your struggle over whether coronavirus is similar

4    enough to smoke, E. Coli, gas vapors, carbon monoxides,

5    and asbestos, but it does seem to me that those concerns

6    raise a factual question of what are the characteristics

7    of coronavirus?  How present was it on this premises?

8    How dangerous was it and what quantities?  Those are all

9    factual questions that can be addressed in discovery.

10          And with respect to the demurrer, the

11   defendants are making a legal point here.  They are

12   saying under no circumstances does our policy -- does

13   our insurance policy provide coverage for the insured in

14   the absence of tangible alteration to the property.

15          Now, I think as we point out in our brief --

16   and I won't belabor the point -- that is not actually

17   consistent with the language of their own policy, and

18   one of the primary interpretative goals in looking at

19   the insurance policy is you need to make sure that every

20   word in that policy makes sense.  You can't reach an

21   interpretation of a policy that renders superfluous

22   language.

23          To point out the obvious, defendant excludes

24   from coverage the mere presence of bacteria.  Now, that

25   exclusion only makes sense if it is against a backdrop

4

1    of damage that goes beyond tangible alteration of the

2    property.  There would be no reason to exclude the

3    presence of bacteria if the policy only covered tangible

4    alteration to property.

5            So, your Honor, I think that addressed your

6    concern, and I will leave it there for now.  I am happy

7    to speak more at length about other issues, but I will

8    leave it there for right now.

9            THE COURT:  Well, let me ask you another

10   question about that.  When I was struggling with the

11   smoke damage, gasoline vapors, et cetera, the

12   distinction in my mind -- and I don't know if this is

13   one that is valid or not, Mr. Ferguson -- the

14   distinction in my mind is that when California shut

15   down, when the Governor ordered us all to shelter in

16   place and businesses to close, it wasn't necessarily

17   because there was COVID at your hotels.  It was because

18   there was a fear that COVID might arrive at your hotels,

19   and there was a fear by having people move around the

20   state, that that would cause us all to infect each

21   other.

22           So even if we assume that COVID infects the

23   air, which I get your point on that, I think the science

24   supports you on that, but I guess the question I have

25   is, was that the cause?

1              MR. FERGUSON:  So, your Honor, to address your

 2       concerns here, I think it is important to understand

 3       that there are two independent possible sources of

 4       coverage here.  The first is the business interruption

 5       insurance coverage, which would be triggered by the

 6       physical presence of coronavirus on the insured

 7       premises.  That is our property, and that is what we

 8       allege is our burden to prove that once we get into

 9       discovery.

10              But I think on the allegations, we certainly

11       have met the requirements for the complaint that we have

12       alleged that there was coronavirus on the premises,

13       which caused physical loss of or damage to the premises.

14              The other independent source coverage that we

15       have under this policy is civil authority coverage, and

16       that doesn't require that there even be coronavirus on

17       our property.  It merely requires that there is direct

18       physical loss of or damage to property somewhere else,

19       and that the civil authority take action based on the

20       presence of coronavirus on another property.

21              Now the coronavirus is widespread in both of

22       the county orders.  The San Mateo County order and

23       Monterey County order mentioned there is coronavirus

24       virus within both of the counties.  They mention

25       specific case numbers.  They mention case numbers up in

the Bay Area.  It is clear in our mind that the local
county authority and the Governor are responding to the
physical presence of coronavirus in enacting the shelter
in place order.

And to underscore the point, this is about the
physical presence of coronavirus.  I think those orders
are designed to require people to avoid direct, physical
contact with the virus.  That is the key issue here.
150,000 people in this county have died because they
have come into physical contact with the virus.

I think that the virus is certainly physical,
and the orders are in response to the physical presence
of the virus that is at other locations and inside the
insured premises.

THE COURT:  Okay.  So let me make sure I am
understanding you.  So the business income is lost
because of the civil authority shutdown.  Doesn't that
also require a direct physical loss, and don't we still
come back to the same problem of whether or not COVID
causes a physical loss?

MR. FERGUSON:  Yes; that is correct, your
Honor.  To trigger the civil authority coverage, it is
our burden in discovery to show that there was
coronavirus on another property.

And what is interesting about the civil

1     authority coverage in this insurance policy is it is

2     written incredibly broadly.  Typically, in other civil

3     authority provisions, there is actually a proximity

4     requirement.  In our case, there actually is no such

5     proximity requirement.

6           So we believe that there was the physical

7     presence of coronavirus that caused a loss of or damage

8     to property essentially anywhere within two counties.

9     And as a result of that, the civil authority within the

10    county's order to ensure premises to be shut down.

11           So when you look at the claim for civil

12    authority in the context of this case and the context of

13    the policy that is in front of you, we think that we

14    sufficiently allege that there is direct physical loss

15    of or damage to other premises, and if we can carry that

16    burden after the demurrer in discovery, then we win this

17    case.

18           But I think all you have to do right now is

19    ask yourself, can the coronavirus cause direct physical

20    loss of or damage to any property?  And again, we would

21    submit that under the 16 cases we cited, the test is

22    whether there is a presence of a hazardous substance,

23    and whether the quantity of that substance renders the

24    property dangerous to human health and renders the

25    property unusable, we think that there is no tangible

8

1     alteration to the property required under this policy.

2             So our burden to invoke code civil authority

3     coverage is to show that somewhere within the County of

4     Monterey or the County of San Mateo that there was

5     coronavirus in such concentration that some property was

6     rendered uninhabitable or unusable because of the

7     concentration of coronavirus.  And we certainly think we

8     can meet that burden in discovery, but for now, the

9     Court has to merely analyze whether we alleged enough to

10    meet that bar.

11            THE COURT:  Thank you.  Mr. Keller?

12            MR. KELLER:  Yes, your Honor.  So I think that

13    your analysis is spot-on and exactly how you should be

14    looking at these issues.  So let me first address the

15    issue that gave you pause.

16            So the courts outside of California, as you

17    mentioned, got into issues like asbestos and carbon

18    monoxide, and those are, as you point out, ultimately

19    not just directed at losses.  It also needs to have the

20    business income loss be caused by that direct physical

21    loss.  Like the carbon monoxide situation, it's,

22    Everybody out of the building.  You are going to die

23    from carbon monoxide.

24            The asbestos, there is direct health problems.

25    There is a smell that is related to a lot of those

1   claims that you are referring to.  And so to have

2   everybody out of the building, that causes the business

3   income loss.

4           Here, the Court need not turn a blind eye to

5   the realities of the pandemic and the business situation

6   where the businesses are open while this pandemic is

7   still ongoing, and that's a result of the fact that it

8   is designed to keep people socially distanced and reduce

9   the spread of the pandemic, and that is why the the

10  shelter is in place so they don't prohibit access of

11  civil authority coverage requires to even allow the

12  hotels to keep people there, which they couldn't in the

13  case of a carbon monoxide, asbestos situation.

14          And further, those cases, again, are outside

15  of California.  The direct physical requirement as

16  prefix to the insurance agreement have to be considered

17  under the context for *MRI Healthcare*, and *MRI Healthcare*

18  says that it's excluded and accompanied by demonstrable

19  physical alteration of the property.

20          So I believe that when you follow the analysis

21  of the policy language under the California case in *MRI*

22  *Healthcare*, that it is not a business income loss caused

23  by direct physical damage to property, and the plaintiff

24  has certainly not alleged that.  At most, they've

25  alleged a physical presence on the property of the virus

1    and not that that has caused the business income loss,

2    nor can they because as I noted, they could have had

3    people there.  They chose to cease and close down based

4    on the counties' orders, and that was the cause of their

5    loss.

6          THE COURT:  Well, let me just correct you.  I

7    don't think they chose to shut down.  They were ordered

8    to shut down.

9          MR. KELLER:  Yes.  They followed the shelter

10   in place orders, and they -- what I meant by that was

11   there was some level of operations that they could have

12   had under the county order such as maybe economically

13   disadvantaged individuals that they still could have

14   provided shelter to.  To completely shut down was not a

15   complete mandate by the counties.

16          But irrespective of that finer point, there is

17   no direct physical damage to property that caused the

18   business income loss.

19          THE COURT:  Well, Mr. Ferguson, I completely

20   disagree with Mr. Keller that anyone had a choice.  I

21   think we were all trying to follow the orders we were

22   given, but in spite of that issue, having looked at the

23   *MRI* case -- and I certainly agree with your

24   representation that once you get to the facts of the *MRI*

25   and the ramping up, the ramping down and all that, it

1      really is not at all like our case here.

2             However, I do think -- and help me with this,

3      Mr. Ferguson -- I do think the *MRI* case is intended to

4      be the framework by which we analyze these cases, and

5      that case pretty much says that because of the need for

6      a physical damage, that it precludes any claim in which

7      the insured suffered a detrimental economic impact

8      without the distinct, demonstrable physical alteration

9      of the property.  Help me out with that, Mr. Ferguson.

10            MR. FERGUSON:  Yes.  So a couple points on

11     *MRI*, your Honor.  First, the term 'physical, as the *MRI*

12     court understands it is, losses that are intangible or

13     incorporeal.  That is what it is using to distinguish

14     against physical, and I don't think that we alleged an

15     intangible or incorporeal loss here.

16            We allege there are specific, physical

17     microbes within our property that are contaminating the

18     air that are hazardous to human health that are

19     rendering it unusable.  And I think to adopt the

20     definition of direct physical loss of or direct physical

21     damage to property, that it excludes the situation where

22     you have an invasion by a physical force into the

23     atmosphere of your property onto all the surfaces of

24     your property and says that is not direct physical loss

25     of or damage to property, it can't be the case.

                                                            12

1    When an insured purchased insurance, they are

2    expecting that when there is a physical catastrophe that

3    shuts down their operation, the insurance coverage will

4    kick in and cover that, and I think that to the extent

5    that *MRI* case suggests that there has to be tangible

6    alteration in the sense that it is perceptible to the

7    eye or to touch, that is simply dicta in that case.

8    This Court is not required to follow *MRI Healthcare* on

9    that rationale.

10   *MRI Healthcare* actually could have said what

11   we are saying here.  It could have said physical damage

12   actually does include the physical invasion by hazardous

13   substances that renders a property unusable, and the

14   outcome would have been exactly the same in *MRI*

15   *Healthcare*, and I am pointing that out to say that

16   discussion of the meaning of direct physical loss of or

17   damage to property wasn't central.

18   One other point about *MRI Healthcare* is the

19   language of coverage in that case and the relevant

20   policy is actually different.  The language of coverage

21   in that policy, direct physical loss to or damage to

22   property.  In our case, it is direct physical loss

23   of...property, and we think that difference in language

24   is critical as we have suffered a direct physical loss

25   of our property because it's been invaded, contaminated,

1    polluted by the hazardous substance that renders it

2    unfit for human use, and the government saw the same

3    hazard was present and ordered us to shut down our

4    operations as a consequence of that.

5            And, your Honor, I think you previously had

6    characterized the shutdown orders as requiring people to

7    distance.  And while that is part of the orders, they

8    actually do go further than that, and this is critical.

9    This is paragraph three of the Monterey order:  All

10   businesses within the facility in the county except

11   essential businesses are required to cease all activity

12   at facilities located within the county.  That is a

13   direct shutdown and a closure of our business that

14   prohibits access to the business, which we think is

15   enough to trigger the civil authority coverage.

16           Mr. Keller has made the point that there were

17   very specific uses that we could have made about

18   properties under these orders.  We could have sheltered

19   homeless people and possibly allowed a limited number of

20   individuals to use the hotel as a residence.

21           What he is trying to do is read into the civil

22   authority provision in our policy of requiring that

23   there be a total prohibition of access to the insured

24   premises.  Well, that word 'total' doesn't actually

25   appear in our insurance policy.  All it says is the

                                                          14

1      government prohibits access to your premises and has

2      done so as a consequence of a direct physical loss of or

3      damage to the properties elsewhere, then insurance

4      coverage kicks in.

5              I hope that addresses your concerns about *MRI*,

6      your Honor.

7              THE COURT:  It is helpful.  Thank you.

8      Mr. Keller, anything you would like to close with?

9              MR. KELLER:  Yes, your Honor.  So at the end

10     of the day, the virus, whether it is present on the

11     property or not, does not cause the business income

12     loss, which it is required to under the policy, and it

13     is not a direct physical loss as -- not a direct

14     physical damage to property as described by *MRI*

15     *Healthcare*.

16             And at the end of the day, they cannot allege

17     that there was a direct physical damage to property that

18     was, in fact, the cause of their business income loss.

19     Thank you.

20             THE COURT:  Any last words, Mr. Ferguson?

21             MR. FERGUSON:  Yes, your Honor.  Thank you.

22     One last word is, I would urge the Court to reread *Ward*,

23     which is the other case that California Mutual cites

24     with the idea that you need a tangible alteration.

25             But what is critical in the *Ward* case is that

1    you have to analyze the scope of coverage within the

2    context of the claims that are asserted.  And so, you

3    know, language that might appear unambiguous in the

4    context of one particular claim might eventually appear

5    ambiguous in the context of another claim.

6            So the two cases the defendant cites, *Ward* and

7    *MRI*, are in such different factual circumstances of

8    their own that I think, given the claims that we are

9    asserting, the scope of the coverage within the policy

10   has to be viewed within the lens of the claims that we

11   are asserting.

12           And given the claims that we are asserting, I

13   think that the insurance policy is, at a minimum,

14   subject to two reasonable constructions.  One is that as

15   the defendants assert that there has to be physical

16   alteration to the property.  The other is the

17   construction.

18           We think this is a reasonable interpretation,

19   and given the Court's struggle with how to resolve this

20   case, we think it's clear that reasonable minds can

21   differ on this.  If that is the case, the tie goes to

22   the plaintiff as ambiguities are construed in favor of

23   the insured.

24           And, your Honor, one last point.  California

25   Mutual actually has a virus exclusion that they include

1    in other policies.  We raised this in the complaint.  In

2    fact, in their reply, they cite the *Michigan* case where

3    the insurance policy issue in that case also had a virus

4    exclusion.  This is a well-known exclusion that is

5    included in many, many, many policies throughout the

6    country, and many of the cases in the wave of COVID

7    litigation in the last few months are going to be

8    decided on that virus exclusion angle.

9         Our client has dutifully paid almost $40,000 a

10   a year in insurance premiums to California Mutual under

11   a policy that does not have a virus exclusion.  This is

12   critical, your Honor.  The fact that California Mutual

13   and the insurance industry at large has a virus

14   exclusion very strongly suggests to us that they believe

15   a virus -- the presence of a virus can cause direct

16   physical loss of or damage to property.  That was not

17   included in this policy.

18        California Mutual very easily could have

19   tacked on the word 'virus' using a comma after the word

20   'bacteria' in the bacteria exclusion.  They could have

21   included the presence of virus from the insurance

22   policy, and they failed to do so.

23        So California Mutual having failed to define

24   the central term in this case, direct physical loss of

25   or damage to property, and having failed to include a

```
 1    virus exclusion, we think the Court should adopt the

 2    plaintiff's very reasonable construction of this

 3    insurance policy and find that our allegation that there

 4    is physical presence of coronavirus and hazardous

 5    concentration on our property is sufficient to trigger

 6    business income interruption insurance coverage, as well

 7    as the fact that there is coronavirus-inhabited

 8    concentration on other properties triggered the

 9    government to close our facilities.

10              Or in the alternative, we are also entitled to

11    civil authority coverage.  And I think with that, your

12    Honor, we would submit.

13              THE COURT:  All right.  The Court is going to

14    take this under submission.  It seems to me that if the

15    Court decides to sustain the demurrer, that the motion

16    to strike is moot, so I don't want to hear argument on

17    that.

18              Anyway, I just want to spend more time

19    thinking about it, and I appreciate your thoughtful

20    argument.  If for any reason I decide that I need

21    additional argument, I will let you know, but otherwise,

22    I hopefully will be able to let you know very soon.

23    Thank you.

24              MR. FERGUSON:  Thank you, your Honor.

25              MR. KELLER:  Thank you, your Honor.
```

```
 1              MR. FERGUSON:  Should there be any additional
 2    briefing or legal issues you should like us to address,
 3    we would be happy to do so.
 4              THE COURT:  This is Mr. Ferguson talking?
 5              MR. FERGUSON:  I am sorry.  Mr. Ferguson, yes,
 6    your Honor.
 7              THE COURT:  Thank you very much.
 8              (Whereupon, the proceedings adjourned at 9:55
 9              a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1    STATE OF CALIFORNIA      )

2                             ) SS.

3    COUNTY OF MONTEREY       )

4

5              I, Jamie L. Setterquist, an official reporter

6    for the Superior Court of the State of California, in

7    and for the County of Monterey, do hereby certify:

8              That, as such reporter, I reported

9    stenographically the above proceedings on Monday, August

10   4, 2020, and that the above and foregoing transcript,

11   consisting of pages numbered from 1 to 19, inclusive,

12   contain a true and correct transcript of all of said

13   proceedings.

14

15             Dated at Salinas, California, this August 7,

16   2020.

17

18

19   _____
     JAMIE L. SETTERQUIST  CSR 13362
20            OFFICIAL COURT REPORTER

21

22

23

24

25
```

20