# EXHIBIT C

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UROGYNECOLOGY SPECIALIST OF FLORIDA LLC,**

        **Plaintiff,**

**v.**                                                            Case No:   6:20-cv-1174-Orl-22EJK

**SENTINEL INSURANCE COMPANY, LTD.,**

        **Defendant.**

## ORDER

This cause comes before the Court on the Motion to Dismiss filed by Defendant Sentinel Insurance Company, LTD. (Doc. 6). Plaintiff Urogynecology Specialist of Florida, LLC filed a Response in Opposition (Doc. 16) and Sentinel filed a Memorandum in Support of its Motion (Doc. 19). For the following reasons, the Motion will be denied.

## I. BACKGROUND[1]

The dispute in this case arises from an insurance contract and the alleged breach of that contract. Sentinel issued Plaintiff an all-risk insurance policy[2] ("the Policy") to cover its gynecologist practice for the period of June 19, 2019 to June 19, 2020. (Doc. 5-1). In early March 2020, the Governor of Florida issued an executive order declaring a state of emergency in Florida due to the COVID-19 pandemic. *See Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-FTM-66NPM, 2020 WL 5240218, at *1 (M.D. Fla. Sept. 2, 2020). As a result of the nationwide and ongoing pandemic, Plaintiff was forced to close its doors for a period of time in March 2020 and could not operate as intended. (Doc. 1-1 at ¶ 13-15). While Plaintiff's business

---

[1] For the purposes of this Motion, the Court will consider as true all of the allegations in Plaintiff's Complaint.

[2] Plaintiff is a named insured under Policy No. 21 SBA BX5636. (Doc. 1-1 at ¶ 18).

was shut down, Plaintiff suffered numerous losses including loss of use of the insured property, loss of business income, and loss of accounts receivable. (*Id.* at ¶ 12). Plaintiff also incurred additional business expenses to minimize the suspension of the business and continue its operations. (*Id.* at ¶ 15).

Plaintiff notified Sentinel of its losses associated with the medical office closing due to the ongoing pandemic and Sentinel denied coverage. (*Id.* at ¶ 20-23). As a result, Plaintiff filed this suit in the Ninth Judicial Circuit, in and for Orange County, Florida on June 2, 2020. (Doc. 1). The relevant Policy provisions upon which Plaintiff's suit relies are as follows:

> **A. COVERAGE**
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.
>
> . . . .
>
> **3. Covered Causes of Loss**
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>     a. Excluded in Section B., EXCLUSIONS; or
>     b. Limited in Paragraph A.4. Limitations; that follow.
>
> . . . .
>
> **5. Additional Coverages**
>
> . . . .
>
> > **o. Business Income**
> >     **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by a direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.
>
> . . . .
>
> > **p. Extra Expense**
> >     **(1)** We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred

>> if there had been no direct physical loss or physical damage to property . . .
>
> . . . .
>
> **q. Civil Authority**
>> **(1)** This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled 7 premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".
>
> . . . .
>
> **6. Coverage Extensions**
>
> . . . .
>
>> **a. Accounts Receivable**
>>> **(1)** You may extend the insurance that applies to your Business Personal Property, to apply to your accounts receivable.
>>>
>>> We will pay for:
>>>
>>>> **(a)** All amounts due from your customers that you are unable to collect;
>>>> **(b)** Interest charges on any loan required to offset amounts you are unable to collect pending payment of these amounts;
>>>> **(c)** Collection expenses in excess of your normal collection expenses that are made necessary by the physical loss or physical damage; and
>>>> **(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable.

(Doc. 5-1 at 36-48).

In Count I, Plaintiff asserts a claim for breach of contract for failure to adequately reimburse Plaintiff for its losses. (Doc. 1-1 at ¶ 24). In Count II, Plaintiff seeks a declaration of the parties' rights under the insurance contract. (*Id*. at ¶ 30). Sentinel was served on June 4, 2020, and timely removed to this Court on July 1, 2020. (*Id.*). Sentinel alleged in its Notice of Removal that this Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332; the Notice of Removal stated that (1) Sentinel is a foreign corporation and citizen of

Connecticut, (2) all members of Plaintiff's LLC are citizens of Florida, and (3) Plaintiff's claims supported a conclusion that damages were in excess of $75,000. (Doc. 1 at 2-6).

## II. LEGAL STANDARD

When deciding a motion to dismiss based on failure to state a claim upon which relief can be granted, the court must accept as true the factual allegations in the complaint and draw all inferences derived from those facts in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id*.

## III. ANALYSIS

Sentinel moves to dismiss Plaintiff's Complaint arguing that the plain language of the policy excludes coverage for Plaintiff's losses. Specifically, Sentinel argues that the Policy expressly excludes losses caused by a virus. Plaintiff responds that the Policy is ambiguous, and any ambiguity should be read in favor of coverage.

### A. Breach of Insurance Contract

The issues surrounding whether insurance policy virus exclusions apply to losses caused by COVID-19 are novel and complex. Courts considering these issues have applied basic contract

principles to determine whether such virus-related clauses exclude coverage. *See Mauricio Martinez, DMD, P.A.*, 2020 WL 5240218, at *2 (analyzing virus exclusions under state law contract interpretations); *see also Turek Enterprises, Inc., v. State Farm Mutual Automobile Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *5 (E.D. Mich. Sept. 3, 2020) (same); *10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5095587, at *4 (C.D. Cal. Aug. 28, 2020) (same).

In Florida, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999). Here, Plaintiff alleges that Sentinel breached the insurance contract by failing to pay for covered losses. Sentinel argues that the plain language of the insurance contract excludes coverage for the cause of Plaintiff's loss. Sentinel relies on the following language from the Policy under the "Limited Fungi, Bacteria or Virus Coverage" provision which states that Sentinel

> will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> **(1)** Presence, growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria or virus.
>
> **(2)** But if "fungi," wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss."

(Doc. 5-1 at 141).

Under Florida law, the "construction of an insurance policy is a question of law for the court." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). "The scope and extent of insurance coverage is determined by the language and terms of the policy." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1298 (M.D. Fla. 2008) (quoting *Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 222 (Fla. 3d DCA 2006)). An insurance policy is a

contract that is construed according to its plain meaning. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). When construing the plain meaning of phrases in an insurance contract, Florida courts "may consult references commonly relied upon to supply the accepted meanings of words." *Id.* (relying on Merriam Webster's Collegiate Dictionary to supply the plain meaning of language in an insurance contract). Finally, the Florida Statutes provide, "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." Fla. Stat. § 627.419.

Sentinel argues that the unambiguous policy terms exclude coverage for any losses caused by a virus, including COVID-19. Plaintiff argues that ambiguity in the insurance policy requires the Court to construe the Policy in favor of coverage. Policy language is ambiguous if it "is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage." *Garcia*, 969 So. 2d at 291 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "A provision is not ambiguous simply because it is complex or requires analysis." *Id.* In addition, "[t]he fact that both sides ascribe different meanings to the language does not mean the language is ambiguous." *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003). An ambiguity exists only if a "genuine inconsistency, uncertainty, or ambiguity in meaning . . . remains after the application of the ordinary rules of construction." *Am. Strategic Ins. Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. 2d DCA 2006) (internal quotation marks omitted).

Here, several arguably ambiguous aspects of the Policy make determination of coverage inappropriate at this stage. Notably, the Policy provided does not exist as an independent document. For example, the "Limited Fungi, Bacteria or Virus Coverage" section of the Policy (Doc. 5-1 at 141) starts by stating that it modifies certain coverage forms. Those forms are not provided in the Policy itself, nor were they provided to the Court. Additionally, the second paragraph states that the virus exclusion "is added to paragraph B.1 Exclusions of the Standard

Property Form and the Special Property Coverage Form" which was similarly not provided to the Court. Without the corresponding forms which are modified by the exclusions, this Court will not make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered. Additionally, it is not clear that the plain language of the policy unambiguously and necessarily excludes Plaintiff's losses. The virus exclusion states that Sentinel will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread, or any activity of "fungi, wet rot, dry rot, bacteria or virus." (*Id.*). Denying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses.

In arguing that the plain language of the Policy excludes coverage for Plaintiff's losses, Sentinel cites a number of cases which uphold similar virus exclusions. The cases, however, are nonbinding and distinguishable. In arguing that Florida courts routinely enforce policy provisions excluding coverage for viruses, Sentinel cites a case in which a policyholder sought coverage when a third-party asserted a claim against him for the transmission of a sexually transmitted virus. *See Clarke v. State Farm Florida Ins.*, 123 So. 3d 583, 584 (Fla. 4th DCA 2012). In arguing that the Court should give the virus exclusion a straightforward application to exclude coverage for losses caused by COVID-19, Sentinel cites cases dealing with pollution exclusions and sewage backups, damage caused by mold, and claims resulting from illness or disease, all of which fell under policy exclusions. (Doc. 6 at 11-12). Importantly, none of the cases dealt with the unique circumstances of the effect COVID-19 has had on our society—a distinction this Court considers significant. Thus, without any binding case law on the issue of the effects of COVID-19 on insurance contracts virus exclusions, this Court finds that Plaintiff has stated a plausible claim at this juncture. Plaintiff alleged the existence of the insurance contract, losses which may be covered under the insurance

- 8 -

contract, and Sentinel's failure to pay for the losses. These allegations, when read in the light most favorable to Plaintiff, are facially plausible. *See Twombly*, 550 U.S. at 555 (holding that a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").

Based on the foregoing, it is ordered as follows:

1. Defendant's Motion to Dismiss (Doc. 6) will be **DENIED.**

2. Defendant **IS ORDERED TO FILE** an Answer to the Complaint within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 24, 2020.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record