# EXHIBIT 3

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE COMMITTEE ON OPINIONS

| | |
|---|---|
| MAC PROPERTY GROUP LLC & THE CAKE BOUTIQUE LLC, <br><br> Plaintiff, <br><br> v. <br><br> SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY, JOHN DOES (1-10) and ABC COMPANIES (1-10), <br><br> Defendant(s). | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CAMDEN COUNTY DOCKET NO. L-2629-20 <br><br> **Civil Action** <br><br> **OPINION** |

Decided: November 5, 2020

Robert W. Williams, Esquire, Mattleman, Weinroth & Miller, P.C., on behalf of Plaintiffs, Mac Property Group, LLC and The Cake Boutique, LLC

Joseph K. Scully, Esquire (Pro Hac Vice) and Elizabeth J. Sher, Esquire, Day Pitney, LLP, on behalf of Defendant, Selective Fire and Casualty Insurance Company

HON. STEVEN J. POLANSKY, P.J.Cv.

Defendant moves to dismiss plaintiff's Complaint in this matter pursuant to Rule 4:6-2.

## BACKGROUND

The Complaint filed by Plaintiffs Mac Property Group, LLC and the Cake Boutique seeks recovery from defendant Selective Fire and Casualty Insurance Company under a policy of insurance issued by Selective Fire and Casualty Insurance Company bearing Policy No. S 1982947. The policy at issue covered the period April 28, 2019 to April 28, 2020. That policy was subsequently renewed for the period April 28, 2020 to April 28, 2021.

1

The policy provides coverage for the insured location at 115 Swedesboro Road, Mullica Hill, New Jersey. The Complaint asserts that the policy provides coverage for both action of civil authority and business income and extra expense losses.

Plaintiffs allege that they sustained a loss of business income and incurred extra expense as a result of the following four events:

1. Executive Order 103 issued by New Jersey Governor Philip D. Murphy on March 9, 2020;

2. The World Health Organization Declaration of a Global Pandemic on March 11, 2020 related to COVID-19;

3. President Donald Trump's Declaration of a National Emergency as a Result of COVID-19 on March 13, 2020; and

4. Executive Order 107 issued by New Jersey Governor Philip D. Murphy on March 21, 2020.

Plaintiffs assert that they suffered direct physical loss and damage to property as a result of being unable to use their property for its intended purpose. As a result of the actions identified above, it is asserted that plaintiffs were required to suspend business operations. Plaintiffs allege causes of action for breach of contract and for declaratory judgment pursuant to N.J.S.A. 2A:16-50 et seq.

## **EXECUTIVE ORDER 103**

The Governor, under Executive Order 103, declared a public health emergency, finding that the spread of COVID-19 within New Jersey constituted an imminent public health hazard. The Order authorized and empowered the State Director of Emergency Management, in conjunction with the Commissioner of the Department of Health, to take any emergency measures they deemed necessary.

This Executive Order however did not order the closure of any business or other commercial establishment.

## WORLD HEALTH ORGANIZATION MARCH 11, 2020
## VIDEO PRESS CONFERENCE

The World Health Organization declared a public health emergency of international concern on January 30, 2020. https://www.who.int/dg/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov) (viewed October 12, 2020).

On March 11, 2020, the World Health Organization declared the COVID-19 outbreak as a pandemic. https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-COVID-19---11-march-2020 (viewed October 12, 2020).

## PRESIDENTIAL DECLARATION

On March 13, 2020, the President of the United States declared a national emergency as a result of the COVID-19 outbreak. Federal Register Volume 85, #53, Wednesday, March 28, 2020, Proclamation 9994.

Under the terms of the Declaration, the Secretary of Health and Human Services was authorized to exercise authority under Section 1135 of the Social Security Act to temporarily waive or modify certain requirements of the Medicare, Medicaid and State Children's Health Insurance Programs and the Health Insurance Portability and Accountability Act Privacy Rules through the duration of the public health emergency.

## EXECUTIVE ORDER 107

On March 21, 2020, Governor Philip Murphy issued Executive Order 107 instituting emergency measures in accordance with the public health emergency and state of emergency declared in Executive Order 103. That Order required that all New Jersey residents remain at home or at their place of residence unless they fell within one of nine enumerated exceptions set forth in the Order. That Order further prohibited gatherings of individuals at parties, celebrations or social events. The premises of all non-essential retail businesses were ordered

to close to the public. Only essential retail businesses were permitted to remain open.

## INSURANCE COVERAGE

Defendant Selective Fire and Casualty Insurance Company issued a policy of insurance to MAC Property Group, LLC & The Cake Boutique, LLC c/o George Benas bearing Policy No. S 1982947 for the period April 28, 2019 to April 28, 2020. This policy was a renewal of a prior policy. The package policy provided both first party coverage as well as liability coverage for the insureds.

Business income/extra expense coverage is provided for a period of twelve months. Business interruption coverage is provided initially under the business owner's coverage form, BP 00 03 (Edition 07/13). This provision provides in part:

> f. Business Income
>
> (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

This language is replaced under the Business Owner's Property Enhancement Endorsement, Form BP 72 46 (Edition 09/18). This endorsement modifies the business interruption coverage as follows:

...
...

Business Income

1. Direct Damage

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises includes the area within 1,000 feet of the site at which the described premises are located.

Plaintiff also seeks coverage under the civil authority coverage. Policy form BP00 03 (Edition 07/13) provides coverage as follows:

i. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of

5

the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends; whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

This coverage is modified by the Business Property Enhancement Endorsement, Form BP 72 46 (Edition 09/18) which reads as follows:

3. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that

6

prohibits access to the described premises, provided that both of the following apply:

   a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than five miles from the damaged property; and

   b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

For Business Income, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises, unless one of the optional waiting period endorsements is attached to this policy and will apply for a period of up to 30 consecutive days from the date on which such coverage begins.

For Extra Expense, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

   a. Four consecutive weeks after the date of that action; or

   b. When your Civil Authority Coverage for Business Income ends; whichever is later.

7

Plaintiff at oral argument could not state whether it was asserting coverage under the original BP 0003 policy, or the endorsement BP 72 76 which modifies the provisions of the base business owner's policy form. The policy provisions cited in plaintiff's brief are from the BP 00 03 form. Defendant, at oral argument, stated that it was relying upon the modified policy provisions in the business owner's property enhancement endorsement.

For purposes of this decision, the Court finds that the businessowner's property enhancement endorsement, BP 72 46, is the proper language to be considered. That form specifically provides on the first page that it modifies the insurance provided under the businessowner's coverage form, which is BP 0003. The Court further notes that regardless of which provision is considered, the determination on this motion would not change irrespective of which language was found to be applicable under the circumstances presented.

The policy under Form BP 0003 (07/13) provides coverage for the following property:

> SECTION I – PROPERTY
>
> A. Coverage
>
>> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
>> 1. Covered Property
>
>>> Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no

8

coverage for property described under Paragraph 2. Property Not Covered.

   a. Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:
          (a) Machinery; and
          (b) Equipment;

      (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

      (5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:...

This form also specifically contains the following relevant exclusion from coverage for virus or bacteria:

   B. Exclusions

      1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

      ...j. Virus Or Bacteria

(1) Any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

(3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

## ANALYSIS

The test for determining the adequacy of the pleading is whether a cause of action is suggested by the facts. Velantzas v. Colgate-Palmolive Corp., 109 N.J. 189 (1998). The court must search in depth and with liberality to determine if a cause of action can be gleaned even from an obscure statement, particularly if further discovery is conducted. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 772 (1989). The court in Printing Mart cautioned that a Rule 4:6-2(e) motion to dismiss "should be granted in only the rarest of instances." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 772 (1989); see also Lieberman v. Port Auth. of N.Y. & N.J., 132 N.J. 76, 79 (1993). The Rule requires that plaintiffs must receive "every reasonable inference of fact ["and a reviewing court must search the complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary."] Printing Mart, supra, 116 N.J. at 746 (quoting DiCristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Every reasonable inference is therefore accorded to the plaintiff. Banco Popular North America v. Gandi, 184 N.J. 161, 165-166 (2005).

Policies of insurance are generally interpreted in favor of the insured and against the insurer. Salem Group v. Oliver, 128 N.J. 1 (1992). This in part is based upon the public policy of interpreting the insurance policy against the drafter. Werner Industries, Inc. v. First State Insurance Company, 112 N.J. 30 (1988). All ambiguities and uncertainties in the insurance policy are resolved in favor of the insured and against the insurer. Sparks v. St. Paul Insurance Company, 100 N.J. 325 (1985); Killeen Trucking, Inc. v. Great American Surplus Lines Insurance Company, 211 N.J. Super. 712 (App. Div. 1986).

The court must enforce the clear and unambiguous terms of the policy of insurance. Erdo v. Torcon Construction Company, 275 N.J. Super. 117 (App. Div. 1994). The test for determining whether an ambiguity exists is whether the phrasing of the policy of insurance is sufficiently confusing such that the average policy-holder cannot make out the boundaries of coverage. Nunn v. Franklin Mutual Insurance Company, 274 N.J. Super. 543 (App. Div. 1994); Ryan v. State Health Benefits Commission, 260 N.J. Super. 359 (App. Div. 1992). A disagreement between the insurer and the insured concerning interpretation of the language of an insurance policy does not alone create an ambiguity. Aviation Charters, Inc. v. Avemco Insurance Co., 335 N.J. Super. 591 (App. Div. 2000), affirmed as modified 170 N.J. 76 (2000). A policy of insurance is ambiguous only where reasonably intelligent persons would differ regarding its meaning. Id. Where the insurance policy language is clear and unambiguous, the Court need not consider the claimed reasonable expectations of the insured. Katchen v. Government Employer's Ins. Co., 457 N.J. Super. 600, 607 (App. Div. 2019), appeal dismissed 241 N.J. 354 (2020); see Passaic Valley Sewerage Commissioners v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011).

Words utilized in the insurance policy are interpreted in accordance with their plain and ordinary meaning. Voorhees v. Preferred Mutual Insurance Company, 128 N.J. 165 (1992); Daus v. Marble, 270 N.J. Super. 241 (App. Div. 1994). Where the policy language will support two interpretations, only one of which will support a finding of coverage, the court will choose the interpretation favoring the insured and find that coverage exists. Meeker Sharkey Associates, Inc. v. National Union Fire Insurance Company of Pittsburgh, 208 N.J. Super. 354 (App. Div. 1986).

Defendant first argues that business interruption coverage does not apply because plaintiff does not allege direct physical loss or damage to covered property. They assert this is a pre-condition to any coverage under the insurance policy.

Defendant asserts that the virus exclusion bars coverage for the losses claimed. They further argue that there was no covered loss by order of civil authority, since the complaint does not allege governmental action taken as a result of damage to nearby property as a result of a covered cause of loss.

Plaintiffs argue in response that because they were unable to use their property for its intended purpose, they suffered direct physical loss or damage to property. Plaintiffs further assert they are entitled to coverage for order of civil authority because they were denied access to their property as a result of property damage. This property damage allegedly results from Executive Orders 103 and 107.

Plaintiffs claim that because the virus exclusion is an affirmative defense, it may not be considered by the court on a Rule 4:6-2 motion. Finally, plaintiffs argue that their reasonable expectations were that losses such as that which occurred would be covered.

Both parties cite to a litany of unreported decisions reaching conclusions either in their favor, or finding that motions to dismiss were premature. Both parties rely upon the New Jersey Appellate Division decision in Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co., 406 N.J. Super. 524 (App. Div.), certif. denied 200 N.J. 209 (2009) to support their position.

In the Wakefern Food Corp. case, the claim arose out of a failure in the North American electrical grid which caused a four-day electrical blackout over portions of the Northeastern United States and Eastern Canada. Wakefern suffered losses due to food spoilage during the power outage. The insurance policy issued by Liberty Mutual Fire Insurance Company contained a specific endorsement providing coverage for damage due to the loss of electrical power. The policy required that the interruption of coverage be caused by physical damage from a covered peril to any power house, generating plant, substation,

power switching station, gas compressor station, transformer, telephone exchange, transmission lines, connections or supply pipes which furnish electricity to a covered location.

The parties disputed whether the interruption of electrical power resulted in physical damage to the specified electrical equipment and property. The court there concluded that despite the differing explanations by experts as to why the power went out and why it remained out, ultimately the entire electrical system was incapable of producing electrical power for several days. The court's decision was based upon the specific language contained in the "Services Away Extension" which provided coverage for interruption of electrical service.

The Appellate Division in Arthur Anderson LLP v. Federal Ins. Co., 416 N.J. Super. 334 (App. Div. 2010) rejected a claim for business interruption losses alleged to have resulted from the September 11, 2001 attacks on the World Trade Center and the Pentagon. The insured asserted that it suffered a loss of earnings in excess of $200,000,000 as a result of these events. The court rejected the claim, finding that the insured could show no loss or damage to its real or personal property described in the policy, and concluded that the insured had no insurable interest in the World Trade Center property or the Pentagon. Based upon this analysis, the court rejected the business interruption claim.

Other decisions reflect the need to examine the specific language in the policy at issue when evaluating coverage. Where an insured's automobile dealership was inaccessible for a week due to a snow storm, the court concluded that even though the property itself sustained some roof damage which did not require a suspension of business, the language of the policy precluded coverage where it was the storm and road conditions which caused the closure of the business. Harry's Cadillac-Pontiac-GMC Truck Co., v. Motors Insurance Corp., 126 N.C. App. 698, 699-702; 486 S.E.2d 249, 251-252 (1997). A Federal District Court concluded that no covered loss of business income occurred as a result of a power outage without direct physical loss to insured property caused by a covered peril, but did find covered loss due to direct physical damage to the computer system of the insured. Southeast Mental Health Center, Inc. v. Pacific Ins. Co., 439 F.Supp. 2d 831, 836-839 (W.D. Tenn 2006). The Oregon Court in Protection Mutual Ins. Co.

v. Mitsubishi Silicon America Corp., 164 Ore.App. 385, 992 P.2d 479 (1999), review denied 330 Ore. 331, 6 P.3d 1100 (2000) found no business interruption coverage because flood was not a covered cause of loss for business interruption.

Neither party cites to any reported New Jersey case specifically addressing a virus exclusion. Other courts have upheld exclusions barring coverage for losses caused by hazardous substances. See Certain Underwriters at Lloyd's of London v. Creagh, 563 F.Appx. 209, 211 (3d Cir. 2014) (finding loss allegedly caused by bacteria excluded); Sentinel Ins. Co. v. Monarch Med Spa, Inc., 105 F.Supp. 3d 464 (E.D.Pa. 215) (enforcing exclusion for loss resulting from presence of or exposure to fungi, bacteria and viruses).

The virus exclusion in the Selective policy contains what is commonly referred to as an anti-concurrent causation provision. This is evidenced in part by the policy language preceding the virus or bacteria exclusion which excludes coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss".

New Jersey Courts have enforced anti-concurrent causation provisions in first party property insurance cases where the policy contains clear and unambiguous language. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 431 (App. Div. 2004) (finding that anti-sequential concurrent causation clause in the earth movement exclusion evidenced a clear intention to bar coverage for earth movement regardless of any other contributing cause). The Appellate Division in a case involving third party coverage applied the same doctrine to find coverage excluded for a claim involving the shooting of a patron at a nightclub where the policy excluded coverage for injury or damage arising out of or caused in whole or in part by an assault and/or battery. Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 104-105 (App. Div. 1998). That policy further excluded coverage where the underlying operative facts alleged constituted an assault or battery, regardless of the theory of liability asserted. Id.

Plaintiff argues in its brief that it is improper for defendants to rely upon an exclusion from coverage on a Rule 4:6-2 motion. They cite no

caselaw in support of that assertion. At oral argument plaintiff refused to acknowledge that COVID-19 is a virus[1].

This argument ignores the fact that it is the plaintiff's Complaint itself which introduces a loss caused by virus as part of the allegations of the complaint. Paragraph 16 of plaintiff's Complaint asserts that on March 9, 2020, Governor Philip Murphy signed Executive Order 103 declaring both a public health hazard and state of emergency in New Jersey. Executive Order 103 starts with the following introductory paragraph:

> WHEREAS, Coronavirus disease 2019 ("COVID-19") is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus....

Paragraph 18 of the Complaint asserts that the President on March 13, 2020 declared a national emergency as a result of COVID-19. That declaration by the President reads in part as follows:

> In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that has now spread globally.

Paragraph 19 of the Complaint discusses the March 21, 2020 Executive Order 107 issued by Governor Murphy requesting residents to remain at home. The language of the order reflects that the restrictions are being imposed to prevent or reduce the spread of COVID-19, a highly contagious virus.

The Complaint itself places the involvement of a virus at issue. Governor Murphy's Executive Orders 103 and 107, the World Health Organization Declaration of a Global Pandemic and the President's Declaration of a National Emergency all reference the coronavirus

---

[1] This Court could take judicial notice pursuant to New Jersey Rule of Evidence 201(b) that COVID-19 is a virus. That however is unnecessary since the governmental orders and declarations referenced in the complaint specifically identify COVID-19 as a virus, and because the exclusion is broader than suggested by plaintiff. The policy excludes losses caused by "any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease".

15

specifically identified as COVID-19. Plaintiff's Complaint in paragraph 21 alleges that as a result of these governmental actions, it was forced to suspend operations.

Plaintiff cannot ignore that its Complaint identifies the coronavirus as the cause of the government actions requiring the suspension of business operations. The allegations of the Complaint itself essentially are that a virus, specifically COVID-19, was the cause of the governmental action. Since the virus is alleged to be the cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss. Under the anti-concurrent causation provision of the insurance policy, "such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

It therefore does not matter whether the closure of plaintiff's business as a result of governmental orders to prevent the spread of the coronavirus constitutes direct physical damage to covered property, nor whether civil authority coverage can be triggered, since the reason for the exercise of that civil authority was the virus.

Ultimately the decision here is specific to the policy language and facts at issue. Plaintiff points to no direct physical loss or damage to covered property. There is no direct physical loss or damage to property which resulted in the order of civil authority. The direct physical damage to the electrical grid present in <u>Wakefern Food Corp.</u> is absent in this case.

Plaintiff points to no language in the insurance policy or declarations which created any reasonable expectation of coverage for the claimed loss. Reasonable expectations must be based upon the insurance contract itself, and not on an insured's subjective belief about what insurance should cover. Because the court finds the policy language, the virus exclusion, to be clear and unambiguous, any expectation of coverage by the insureds is not reasonable.

## **CONCLUSION**

For these reasons, the Court concludes that defendant is entitled to dismissal of plaintiff's claims with prejudice. Amendment of the Complaint will not change the conclusion that plaintiff's claims based upon actions taken to slow or stop the spread of the coronavirus fall within the virus or bacteria exclusion. For that reason, the Court will not grant leave to amend, and the dismissal will be with prejudice.

**DAY PITNEY LLP**  
Elizabeth J. Sher, Esq.  
Attorney I.D. No. 030601983  
Day Pitney LLP  
One Jefferson Road  
Parsippany, NJ 07054  
(973) 966-6300  
**ATTORNEYS FOR** Defendant  
Selective Fire and Casualty Insurance Company

<u>**ORDER MODIFIED BY COURT**</u>

| | |
|---|---|
| MAC PROPERTY GROUP LLC & THE CAKE BOUTIQUE LLC,<br><br>Plaintiff,<br><br>v.<br><br>SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY, JOHN DOES (1-10) and ABC COMPANIES (1-10),<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CAMDEN COUNTY<br>DOCKET NO. L-002629-20<br><br>**Civil Action**<br><br>**ORDER TO DISMISS PLAINTIFF'S COMPLAINT AGAINST DEFENDANT SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY** |

**THIS MATTER** having been opened to the Court by Day Pitney LLP, attorneys Defendant Selective Fire and Casualty Insurance Company ("Selective"), upon notice to Mattleman, Weinroth & Miller, P.C., attorneys for Plaintiff Mac Property Group LLC & The Cake Boutique LLC ("Plaintiff"), for an order dismissing the Complaint pursuant to R. 4:6-2(e) for failure to state a claim; and the Court having considered the moving papers and the papers filed in opposition, and having heard the argument of counsel on

106395768.3

October 30, 2020, and for the reasons set forth in the written opinion of the Court;

**IT IS** on this 5th day of November, 2020, **ORDERED** as follows:

1. Plaintiff's Complaint be and the same is hereby dismissed, with prejudice.

2. A true copy of this Order shall be served upon all counsel of record via regular mail within 7 days of receipt of this order.

_____
HON. STEVEN J. POLANSKY, P.J.Cv.

[ ] Unopposed
[ X ] Opposed