# EXHIBIT 4

**PREPARED BY THE COURT**

| | |
|---|---|
| MATTDOGG, INC. (d/b/a PURE FOCUS SPORTS),<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　　　　　　　Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MERCER COUNTY<br>DOCKET NO. L-820-20<br><br>CIVIL ACTION<br><br><br>**AMENDED AND CORRECTED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

**THIS MATTER** having come before the Court, the Hon. Robert Lougy, P.J. Ch., presiding, on the application of Defendant Philadelphia Indemnity Insurance Company ("PIIC"), represented by Richard L. Fenton, Esq., for an order dismissing Plaintiff's complaint for failure to state a claim for which relief may be granted; and Plaintiff Mattdogg, Inc. (d/b/a Pure Focus Sports), represented by Ralph P. Ferrara, Esq., having filed opposition; and Defendant having filed a reply; and the Court having considered the parties pleadings, submissions, and arguments; and for the reasons as stated below; and for good cause shown;

**IT IS** on this 17th day of November 2020 **ORDERED** that:

1. Defendant's application for an order dismissing Plaintiff's complaint with prejudice for failure to state a claim upon which relief may be granted is **GRANTED**.

2. This Order shall be deemed served upon filing on eCourts.

/s/ Robert Lougy<br>ROBERT LOUGY, P.J. Ch.

X    OPPOSED

     UNOPPOSED

**PURSUANT TO RULES 1:6-2(d) AND 1:7-4, THE COURT PROVIDES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

This matter comes before the Court on Defendant's application to dismiss with prejudice Plaintiff's complaint. The Court granted Defendant's request for oral argument. See R. 1:6-2(d) (stating that, upon request of a party in motions involving matters other than discovery or calendaring, request for oral argument "shall be granted as of right."); see also Raspantini v. Arocho, 364 N.J. Super. 528, 531 (App. Div. 2003) (discussing "clear mandate of the rule" that court grant oral argument as of right upon request).

Plaintiff filed its complaint on April 27, 2020. Plaintiff operates a health club. Plaintiff seeks a declaration that, based on the Pandemic and closure orders, it has suffered a covered loss within the Commercial Property coverages of the Commercial Lines Policy issued by Defendant, Philadelphia Indemnity Insurance Company ("PIIC"). Plaintiff seeks a declaration that Executive Orders issued by Governor Murphy triggered "business

interruption and extra expense coverage, including coverage under the Civil Authority provision." The Complaint also seeks a declaration that the Virus Exclusion in Plaintiff's policy does not apply.

Several provisions of Plaintiff's insurance policy with Defendant are relevant here. The policy includes certain coverage for lost business income for:

> . . . the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

The policy's Extra Expense Coverage applies to:

> a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
>
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

An endorsement in the policy addresses both of these coverages:

> D. Business Income and Extra Expense
>
> . . . .
>
> 2. We will pay for the actual loss of "Business Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."
>
> . . . .

> 4. The following, when used in this section, are defined as follows:
>
>> a. "Extra Expense" means necessary expenses you incur during the "Period of Restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."
>>
>> b. "Business Income" means Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred during the "period of restoration;" and continuing normal operating expenses including payroll.

Under the civil authority coverage, Defendant agreed:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>>
>> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Finally, the policy provides: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

Defendant argues that Plaintiff fails to state a claim for which relief may be granted because Plaintiff has pled no facts showing a "direct physical loss of or damage to" any insured property, as required under the Business Income and Extra Expense Coverages.

Defendant argues that the complaint fails because it does not allege any physical loss or damage to the premises. Defendant argues that the Civil Authority provision does not apply because Plaintiff has alleged no facts supporting application of the provision, including no physical loss or damage and no connection between the issuance of the orders and any physical loss. Finally, Defendant argues, even had Plaintiff alleged facts of damage, Plaintiff cannot overcome the virus exclusion coverage. And Defendant argues that Plaintiff fails to establish that the virus exclusion is contrary to public policy.

Plaintiff argues that its complaint states a claim. Plaintiff argues that Defendant ignores the decisional law that have denied similar applications by insurance companies, and discusses several cases that have acknowledged that this area of law remains in flux and under development. Plaintiff argues that it has alleged sufficient damage and points to decisions that have recognized physical damage as a loss of functionality. Additionally, Plaintiff argues that Defendant's attempt to dismiss the civil authority provision fails and that Defendant barely addresses it except based on technicalities. Finally, Plaintiff argues that the virus exclusion provision is against public policy. Plaintiff also argues regulatory estoppel.

In reply, Defendant reiterates that Plaintiff's complaint fails because it cannot establish a "direct physical loss." Defendant disputes Plaintiff's reading of published opinions discussing loss. Defendant argues that Plaintiff cannot escape the clear meaning of the virus exclusion provision. And, finally, Defendant points out that Plaintiff's complaint is devoid of any allegations of regulatory estoppel.

Defendant seeks to dismiss Plaintiff's complaint under Rule 4:6-2(e). In determining whether a plaintiff has failed to state a claim upon which relief can be granted under Rule 4:6-2(e), the Court limits its examination to evaluating the legal sufficiency of the facts alleged on the face of the complaint. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). The Court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (citing DiCristoforo v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). At this preliminary stage of the litigation, the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint; therefore, plaintiffs are entitled to every reasonable inference of fact. Ibid. (citing Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)). In short, "the test for determining the adequacy of a pleading [is] whether a cause of action is 'suggested' by the facts." Ibid. (citing Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." Ibid.

If the complaint states no basis for relief, dismissal of the complaint is appropriate: "[d]iscovery is intended to lead to facts supporting or opposing a legal theory; it is not designed to lead to formulation of a legal theory." Camden Cty. Energy Recovery Assocs., L.P. v. DEP, 320 N.J. Super. 59, 64 (App. Div. 1999). Thus, "if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should

be dismissed." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107-08 (2019) (citing Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011); Camden Cty. Energy Recovery, 320 N.J. Super. at 64-65)). The Court may dismiss some of the counts without dismissing the entirety of the case. See Jenkins v. Region Nine Housing, 306 N.J. Super. 258 (App. Div. 1997). However, dismissals "should be granted in only the rarest of instances." Printing Mart-Morristown, 116 N.J. at 772.

Ordinarily, a dismissal for failure to state a claim is without prejudice, and the court has the discretion to permit a plaintiff to amend the complaint to allege additional facts to state a cause of action. Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2010). Complaints should not be dismissed if the facts suggest a potential cause of action that may be better articulated by an amendment of the complaint. Printing Mart-Morristown, 116 N.J. at 746.

Although an insurance policy is a contract, "the insurance company is the expert and unilaterally prepares the policy, whereas the insured 'is a layman unversed in insurance provisions and practices.'" Villa v. Short, 195 N.J. 15, 23 (2008) (quoting Gibson v. Callaghan, 158 N.J. 662, 669 (1999)). Therefore, we apply different rules to the interpretation of these contracts of adhesion and "assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992).

Gibson, 158 N.J. at 671, instructs that this Court is required to read coverage provisions broadly and construe exclusionary clauses strictly against the insurer,

understanding "that the insured is entitled to protection to the full extent that any reasonable interpretation of them will permit." <u>Sealed Air Corp. v. Royal Indem. Co.</u>, 404 N.J. Super. 363, 376 (App. Div. 2008); <u>see also</u> <u>Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.</u>, 181 N.J. 245, 269-70 (2004) (noting a court's obligation is "to protect the insured to the full extent that any fair interpretation [of the policy] will allow") (alteration in original) (quoting <u>Mazzilli v. Accident & Cas. Ins. Co.</u>, 35 N.J. 1, 7 (1961)).

In interpreting an insurance policy, New Jersey courts begin with the plain language of the policy and give "the policy's words 'their plain, ordinary meaning.'" <u>President v. Jenkins</u>, 180 N.J. 550, 562 (2004) (citation omitted). "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." <u>Ibid.</u>; <u>see also</u> <u>Longobardi v. Chubb Ins. Co.</u>, 121 N.J. 530, 537 (1990). However, if the policy language "fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage," <u>President</u>, 180 N.J. at 563, to "comport with the reasonable expectations of the insured." <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 595 (2001).

The Court grants Defendant's motion as Plaintiff's claims cannot survive the virus exclusion provision, which explains that Defendant "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 – indeed, Plaintiff alleges as much, Compl. at ¶¶ 11-14 – and any losses incurred therefrom are squarely within the exclusion. The civil authority provision, by its plain terms, does not apply here. The

provision applies only in specifically defined circumstances regarding damage to a nearby property and a denial of access to the surrounding area. Plaintiff alleges no facts establishing any nexus between damage to nearby property and Governor Murphy's orders.

Finally, the Court does not find that Plaintiff's arguments of regulatory estoppel defeat Defendant's motion. First, the complaint itself alleges no facts in support of it. And second, Plaintiff's theory of regulatory estoppel lies far outside the bounds of the equitable principles underlying it. Additionally, regulatory estoppel does not void clear and unambiguous provisions or provide a basis for recission.

Given the disposition of Defendant's application in light of the virus exclusion clause, the Court need not reach the question whether Plaintiff's complaint alleges "a direct physical loss" sufficient to withstand dismissal at this stage of the proceeding had that exclusion not been part of the policy.

The Court dismisses Plaintiff's complaint with prejudice as no further discovery or amended pleadings would allow Plaintiff to avoid the virus exclusion provision that is a part of its contract with Defendant.