## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZAGAFEN BALA, LLC,** | : | **CIVIL ACTION** |
| **VK TAVERN, LLC,** | : | |
| **VINTAGE KOSHER, LLC,** | : | |
| **REAL FRESH, INC.,** | : | |
| *individually and on behalf* | : | |
| *of all others similarly* | : | |
| *situated,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 20-3033** |
| | : | |
| **TWIN CITY FIRE INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

Plaintiffs in this case, like many business owners throughout Pennsylvania, have been forced to close or modify their operations due to the COVID-19 pandemic and consequent government closure orders. Plaintiffs suffered business income losses and sought indemnity from their insurance provider, Twin City Fire Insurance Company ("Twin City") under their all-risk commercial property policies. Twin City denied Plaintiffs' claims. Plaintiffs then filed suit on behalf of themselves and a putative class against Twin City for breach of contract and seeking a declaratory judgment. This matter is currently before the Court on Defendant Twin City's 12(b)(6) Motion to Dismiss Plaintiffs' Amended Class Action Complaint for failure to state a claim on which relief can be granted. Having considered Twin City's

motion, Plaintiffs' response in opposition, Twin City's reply, and Plaintiffs' sur-reply, the Court will grant Defendant's motion because Plaintiffs' claims are not covered by the terms of their policies.

## I.   Factual Background[1]

The named plaintiffs in this putative class action are all business owners and operators who have suffered losses due to the coronavirus pandemic and related government restrictions, and whose insurance claims have been denied by Defendant. Plaintiff Zagafen Bala, LLC owns a kosher dairy restaurant, Plaintiff VK Tavern, LLC owns a kosher meat restaurant, Plaintiff Vintage Kosher, LLC operates a kosher wine and spirits shop, and Plaintiff Real Fresh, Inc. d/b/a Pagano's Restaurant and Bar is a "food emporium" located in Philadelphia. Plaintiffs' Amended Class Action Complaint ("Compl."), ECF No. 15, ¶¶ 1-2. Twin City is a property and casualty insurance company and a subsidiary of Hartford Financial Group, Inc. Compl. ¶ 9.

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The Court draws the following facts from the Amended Complaint and the attached exhibits. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

2

All Plaintiffs purchased Business Owner's coverage from Defendant. Compl. ¶ 4. Plaintiffs Zagafen, Tavern, and Vintage Kosher purchased an insurance policy from Twin City for a policy period of December 15, 2019 to December 15, 2020. Compl. ¶ 13; ECF No. 15, Ex. A. Twin City issued Plaintiff Pagano's policy for a policy period of April 24, 2019 to April 24, 2020. Compl. ¶ 14; ECF No. 15, Ex. B.[2] The Policies are "all risk" policies, which provide coverage for all covered losses unless explicitly excluded or limited. Specifically, the Policies cover "direct physical loss of or direct physical damage to Covered Property. . . caused by or resulting from a Covered Cause of Loss." Coverage Form at 1. "Covered Cause of Loss," in turn, is defined as "risks of direct physical loss unless the loss is" otherwise excluded or limited. *Id*. at 2.

The Policies include identical riders providing coverage for "Business Income and Extra Expense" ("Business Income Coverage") and "Business Income for Civil Authority Actions" ("Civil Authority Coverage"). Compl. ¶ 4. The Policies also contain a relevant exclusion clause ("Virus Exclusion"), which states that Twin City "will not pay for loss or damage caused directly or indirectly by . . . Presence, growth, proliferation, spread or any activity of . . . virus." Virus Coverage at 1. Any

---

[2] As the language at issue in the two policies is identical, the Court will refer simply to the "Policy" or "Policies" for its analysis. The relevant provisions (except for the Virus Exclusion) all come from the "Special Property Coverage Form," labeled Form SS 00 07 07 05 (cited as "Coverage Form"). The Virus Exclusion is found in a separate endorsement for "Limited Fungi, Bacteria or Virus Coverage," labeled Form SS 40 93 07 05 (cited as "Virus Coverage").

loss or damage "caused directly or indirectly" by the "[p]resence," "proliferation," "spread" or "any activity of" a "virus" is excluded from coverage. *Id.*

In their Amended Complaint, Plaintiffs aver they were forced to "suspend or reduce business" due to orders issued by civil authorities in Pennsylvania ("Closure Orders") mandating the closure of their on-site services to protect patrons and employees from exposure to COVID-19. Compl. ¶ 5. Plaintiffs claim their businesses are not considered "essential," and have therefore been subject to a variety of Closure Orders by state and local authorities. *Id.* These Closure Orders prevented Plaintiffs from operating their businesses and using their insured premises for their intended purpose. *Id*. at ¶ 27. Plaintiffs also claim they were required to take steps to prevent further damage to their businesses and minimize the suspension of business. *Id*. at ¶ 5. Plaintiffs do not allege that the coronavirus was present at any of the insured properties. *Id.* at ¶ 5.

Plaintiffs believe that their policies with Defendant, their property insurer, cover these virus-related losses. Plaintiffs made timely claims to Twin City but were denied coverage. Compl. ¶ 6. Plaintiffs allege, upon information and belief, that Twin City and its parent Hartford have refused to pay its insureds for losses suffered under similar circumstances on a wide-scale and uniform basis. Compl. ¶ 6. Plaintiffs bring breach of contract claims and seek declaratory relief on behalf of themselves and other businesses insured by Twin City under similar policies who

have also suffered business losses related to the Closure Orders. *Id*. ¶ 43. Plaintiffs ask the Court to declare that Defendant breached its contracts with Plaintiffs when it denied their claims and that the business losses incurred in connection with the Closure Orders are covered under the Policies.  *Id*. at p. 27.

## II.    Procedural History

Plaintiffs filed suit on June 23, 2020 on behalf of themselves and a putative class against Twin City. ECF No 1. Twin City moved to dismiss (ECF No. 13) and Plaintiffs filed an Amended Complaint, asserting counts against Defendant for breach of contract and seeking a declaratory judgment. ECF No. 15. Twin City moved to dismiss the Amended Complaint on November 18, 2020. ECF No. 25. That motion has been fully briefed and is now before the Court for resolution.

## III.   Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). This Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Third Circuit directs the Court to apply a three-step analysis under a 12(b)(6) motion. First, the Court must take note of the elements the plaintiff must plead to state a claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 675). Next, the Court must identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. *Id*. In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution*, *L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

## IV.   Discussion

### A. Legal Framework

The issue before the Court is one of contract interpretation. The interpretation of an insurance contract is a question of law. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). The Court must interpret the plain language of the contract read in its entirety, giving effect to all its provisions. *Id.* Here, the Court gives the

words of the Policies "their natural, plain, and ordinary sense" meaning. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999).

When the policy language is "clear and unambiguous," the Court must "give effect to that language." *401 Fourth Street v. Inv'rs Ins. Co.*, 879 A.2d 166, 170 (Pa. 2005). When policy language is ambiguous, the Court is to construe the provision against the insurer and in favor of the insured. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction and interpretation. *Madison Const. Co.*, 735 A.2d at 106. The language may not be stretched beyond its plain language meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). Mere disagreement between the parties does not render the policy language ambiguous. *Id.*

The guiding principle in interpreting an insurance contract is to effectuate the reasonable expectations of the insured. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted). Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express terms of the contract. *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994). Nonetheless, the language of the insurance contract itself serves as the best evidence of the parties'

reasonable expectations. *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331 (Pa. Super. Ct. 2010).

## B. Prima Facie Coverage

As the insured, Plaintiffs have the initial burden of establishing coverage under the Policies. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). Where the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying coverage, the insurer then has the burden of proving that the exclusion applies. *Id*. In its motion to dismiss, Twin City argues that Plaintiffs have not and cannot show their claims fall within the Policies' coverage. Plaintiffs respond that they have sufficiently alleged facts that, under its reasonable interpretation of the Policies, trigger coverage or at minimum allow them to proceed past the motion to dismiss stage.

### 1. Business Income Coverage

The Policies' Business Income Coverage is outlined on the Special Property Coverage Form. Coverage Form at 10. It provides for Business Income Coverage as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property. . . within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

*Id*. The Policies further provide:

> We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises"...caused by or resulting from a Covered Cause of Loss.

*Id.* "Covered Cause of Loss" is defined as "risks of direct physical loss," unless the loss is specifically excluded or limited in another provisions. *Id*. at 2. "Operations" means, in part, the "business activities occurring at the [insured property]." *Id*. at 24. "Period of restoration" means, in part, "the period of time that [ ] begins with the date of the direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss" at the insured property ending on either the date when the property "should be repaired, rebuilt, or replaced with reasonable speed and similar quality" or "[t]he date when [ ] business is resumed at a new, permanent location." *Id*. at 24-25.

Plaintiffs claim they experienced a "Covered Cause of Loss" caused by the Closure Orders, which denied Plaintiffs use of their insured properties. Compl. ¶ 29. Plaintiffs characterize the Closure Orders as a "blockade" that prevented employees and patrons from entering the businesses for their intended purposes. *Id*. Plaintiffs do not claim the COVID-19 virus was present at any of the businesses. *Id.* Defendant argues that the Plaintiffs' loss of use of their insured properties does not constitute a "Direct Physical Loss" as it is defined by the Policy.

The Business Income Coverage applies only when business losses are caused by "direct physical loss of or damage to property" of the insured. Plaintiffs argue

that the "loss of use" or "impairment of function" of their businesses due to the Closure Orders constitutes a Covered Cause of Loss. Plaintiffs reason that because the policyholder may show either "direct physical loss" *or* "direct physical damage" to trigger coverage, "direct physical loss" cannot require physical damage, or Court's interpretation would violate the principle that all words in a contract have distinct meaning. *Moran v. Bair*, 304 Pa. 417, 475 (Pa. 1931) ("If possible, no part of a contract should be disregarded or treated as a nullity or a redundancy."). However, requiring the "physical loss" to be connected to a condition of the property does not render the term "loss" redundant, since it is possible that the insured property could suffer a "physical loss" without structural damage to the property, as discussed below. It is just not the case here.

Third Circuit precedent is instructive. In *Port Authority of New York and New Jersey*, the Third Circuit Court of Appeals determined that asbestos causes physical loss or damage if it is present in such large quantities that it makes the structure "uninhabitable and unusable." *Port Auth. of N.Y. & N.J. v. Affiliated MF Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002). The Court explained that "[i]n ordinary parlance and widely accepted definition, physical damage to property means distinct, demonstrable, and physical alteration of its structure." *Id.* (quoting 10 Couch on Ins. § 148:46 (3d ed. 1998)). Damage by sources unnoticeable to the naked eye must "meet a higher threshold" than "typical examples of physical damage from an

outside source that may demonstrably alter the components of a building." *Id.* at 235. Recognizing that the policy at hand also covered "physical loss," the Court concluded that the proper standard for 'physical loss or damage' is one that triggers coverage:

> only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its *function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable*, or if there exists an *imminent threat* of the release of a quantity of asbestos fibers that would cause such *loss of utility*.

*Id*. at 236 (emphasis added). Thus, the criteria for 'physical loss' caused by a source "unnoticeable to the naked eye" is "whether the functionality of the . . . property was nearly eliminated or destroyed, or whether the[] property was made useless or uninhabitable." *See also Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826 (3d Cir. 2005) (finding an issue of material fact existed as to whether a house's functionality was nearly eliminated or destroyed, or made useless or uninhabitable, by the presence of e coli in a well).

For the economic loss the Plaintiffs claim to be compensable under the terms of the Policies and Pennsylvania law, the losses resulting from their inability to operate their premises must "bear a causal relationship to some *physical condition* of the premises." *4431, Inc. et al v. Cincinnati Ins. Cos*., No. 5:20-cv-04396, 2020 WL 7075318, at *11 (E.D. Pa. Dec. 3, 2020) (emphasis in original). There must also be an "element correlating to [the] extent of operational utility – i.e., a premises must

be uninhabitable and unusable, or nearly as such." *Id*; *see also Brian Handel D.M.D. v. Allstate Ins. Co*., No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) (finding *Port Authority* and *Hardinger* preclude a finding of "direct physical loss of or damage to" property where it remained inhabitable and usable, albeit in limited ways).

The facts pleaded in Plaintiffs' Amended Complaint do not allege losses that bear a causal connection to the physical condition of the premises or show that the conditions operated to completely or near completely preclude operation of the premises as intended. *4431, Inc*., 2020 WL 7075318, at *10. Plaintiffs have not pleaded that their losses were caused directly by the coronavirus, but rather that the "closure orders operate as a blockade that prevents employees and patrons from entering the businesses for their intended purpose." Compl. ¶ 29. Plaintiffs allege that their businesses were not considered "essential," and were therefore subject to a variety of Closure Orders issues by state and local authorities, preventing Plaintiffs from operating their businesses or limiting their operations. *Id.* at 27. This is not loss of or damage to property within the meaning of the Policies.

Plaintiffs' allegations show they were denied some access to their insured properties or were only able to run their businesses for limited purposes, which caused them to lose income. However, no Closure Order by any authority identified by Plaintiffs required restaurants and shops like those run by Plaintiffs to close

completely. Pennsylvania Governor Wolf's March 19, 2020 Order, the only Closure Order cited by Plaintiffs, expressly allowed restaurants, such as Plaintiffs', to continue offering "carry-out, delivery, and drive-through food and beverage service . . . so long as social distancing and other mitigation measures are employed to protect workers and patrons." *See* Order of the Governor of the Commonwealth of Pennsylvania regarding the Closure of All Businesses that are not Life Sustaining, (Mar. 19, 2020). Thus, Plaintiffs' properties remained inhabitable and usable, albeit in limited ways. To the extent Plaintiffs argue that the threatened presence of the virus relates to the physical condition of the property, they have similarly not shown that their properties were rendered completely or almost completely uninhabitable or unusable. As discussed above, Plaintiffs have only shown that the Closure Orders limited their business operations. Further, the presence or threatened presence of the coronavirus is a physical condition that can be largely remediated by mask wearing, social distancing, and disinfecting surfaces. This does not meet the standard for a physical loss caused by a source invisible to the naked eye.

Further, the Policies only provide Business Income Coverage during the "Period of Restoration." That period exists only until the earlier of "[t]he date when the property at the described premises should be *repaired, rebuilt, or replaced* with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location."  Coverage Form at 24 (emphasis added). Implicit in the

Business Income Coverage, then, is the idea that there must be something to "repair[], rebuil[d], or replace[]" – none of which exists for the loss of use suffered by the Plaintiffs. *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it.").

Plaintiffs argue that changes made to the properties to ameliorate the threat of the virus can reasonably be interpreted as "rebuild[ing]" or "replac[ing]" the premises. However, those changes—erecting Plexiglass barriers or otherwise enhancing space between patrons—are more accurately characterized as alterations to the property. To say they require Plaintiffs to "rebuild" or "replace" their restaurants and stores strains the words beyond "their natural, plain, and ordinary sense" meaning. *Madison Const. Co.*, 735 A.2d at 108. That the extent to which the virus may be transmitted via aerosols and other "scientific realities" remain open factual issues does not prevent the Court from drawing these conclusions.

To the extent Plaintiffs argue the Court should hold that their losses are covered regardless of the language of the Policies because they "reasonably expected" them to be covered, those arguments are unavailing. Plaintiffs have not pleaded facts that lead the Court to conclude that Defendant or its agent "create[d] in the insured a reasonable expectation of coverage that is not supported by the terms

of the policy." 38 F.3d at 1311. The Court looks to the totality of the insurance transaction to ascertain the reasonable expectations of the insured. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006) (quoting *Liberty Mut. Ins. Co. v. Treesdale, Inc*., 418 F.3d 330, 344 (3d Cir.2005)). The Policies here are fundamentally property insurance policies. The Special Property Coverage Form clearly states, in the first clause, that Twin City will "pay for direct physical loss of or physical damage to *Covered Property*." Coverage Form at 1.

Plaintiffs have pleaded no facts that lead the Court to believe they reasonably expected business losses not tied to any kind of actual damage to property would be covered. Further, Plaintiffs have alleged no change in the policy that they were unaware of, *see* 38 F.3d at 1312 ("the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change") (internal citation omitted), or any representation by Defendant or its agents that business losses under these circumstances would be covered, *see Rempel v. Nationwide Life Ins. Co*., 370 A.2d 366 (Pa. 1977) ("It is therefore not unreasonable for consumers to rely on the representations of the expert rather than on the contents of the insurance policy itself.") that would give rise to a reason to go against the unambiguous language here.

### 2. Civil Authority Coverage

Plaintiffs' Policies also include a provision governing covered losses flowing from actions of a "civil authority":

> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

Coverage Form at 11. This Civil Authority Coverage, like the Business Income Coverage, is predicated on physical loss or damage to property. The Civil Authority Coverage applies only when the insured is prohibited from accessing their own property due to a government order, which must itself be the direct result of a Covered Cause of Loss to a property in the immediate area of the insured property. Plaintiffs argue that the Civil Authority Coverage applies because property in the immediate area around the insured property faces the same "risks of direct physical loss" the insured properties do – the presence of the virus or threatened presence of the virus.

It is not reasonably disputed that the Closure Orders were a direct result of the COVID-19 pandemic or that the Closure Orders limited Plaintiffs' ability to operate their businesses. That has no bearing on determining coverage under the Civil Authority provision. However, Plaintiffs' claims here fail for the same reason they do above. The conditions that led to the limitations on the insured properties were not the direct result of a "risk[ ] of direct physical loss" to property in the immediate area of the insured property because no other property was rendered uninhabitable

or unusable due to a physical condition of that property. *4431, Inc.*, 2020 WL 7075318, at *10. The "Covered Cause of Loss" requirement applies equally here as it did to the Business Income Coverage.

The Plaintiffs also argue that because the "period of restoration" requirement does not apply to the Civil Authority Provision, the fact that they do not need to "repair[], rebuild[], or replace[]" their insured properties does not bar recovery under that provision. However, those requirements do not apply to Plaintiffs' properties under the Civil Authority Coverage. Under this provision, the Plaintiffs' property need not be damaged or repaired at all. In fact, the condition of the Plaintiffs' property is irrelevant. It is the "Covered Cause of Loss" (i.e. "risks of direct physical loss") to "property in the immediate area" of the insured property that is the touchstone for Civil Authority Coverage. To prevail on this claim, Plaintiffs would need to satisfy the same standard articulated above, but for a property or properties in the immediate area of their businesses, and then show that they were barred from their own insured premises by civil authorities due to the conditions at those neighboring businesses. That the Closure Orders themselves caused income loss by depriving Plaintiffs of the use of their properties to a certain extent is unfortunate but of no mind; the Plaintiffs are not covered for that under a plain language reading of the Civil Authority Coverage.

### 3.  Virus Exclusion

17

Even if Plaintiffs had plausibly alleged their losses qualified for Business Income Coverage or Civil Authority Coverage, the Virus Exclusion precludes coverage. The Virus Exclusion provides that Twin City "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . virus." Virus Coverage at 1. The exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area." *Id.*

Plaintiffs claim that this provision does not apply because it was not the actual virus that caused their losses, but the threatened presence of the virus and the Closure Orders. However, by the terms of the Policy, the virus only needs to be one cause of loss, not the sole cause of loss, for the exclusion to bar coverage. That the virus may or may not be present at the insured properties is immaterial—the Plaintiffs' alleged that their losses stem from the Closure Orders designed to prevent the exposure to COVID-19 and the spread of the virus. Even if the virus was not the direct cause of the Plaintiffs' losses, it was at least an indirect cause, which is sufficient to bar coverage under the Virus Exclusion clause.

Plaintiffs also argue that the Virus Exclusion does not bar coverage here because it is ambiguous. However, the case law does not support that argument. A Third Circuit panel upheld a similar exclusion barring coverage for losses caused by

hazardous substances or microorganisms. *See, e.g.*, *Certain Underwriters at Lloyds of London Subscribing to Policy No. SMP3791 v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (applying microorganism exclusion to bacteria). A sister court recently upheld a virus exclusion identical to this Policy's as unambiguous. *See Wilson v. Hartford Cas. Co*., No. 20-cv-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020) ("[Insurer] will not pay for loss or damage caused directly or indirectly by ... [p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus."). In his opinion, Judge Robreno noted that several Pennsylvania courts have also "enforced similar exclusions as unambiguous." *Id.* (collecting cases).

That the Virus Exclusion was in an endorsement and not included in the specifically enumerated exclusions does not preclude its application here. Plaintiffs argue that the definition of "Covered Causes of Loss" refers only to a specific section of exclusions and a specific paragraph of limitations, and so is not limited by the Virus Exclusion, which is found elsewhere. However, exclusions are "effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273, 283 (E.D. Pa. 2017). Just as in *Wilson*, "the Policy language here…is conspicuously displayed, clear, and unambiguous." 2020 WL 5820800, at *7. That the Virus Exclusion was located on

a separate endorsement a not the Special Property Coverage Form in the Policy does not make it any less binding.

Lastly, Plaintiffs argue that Twin City should be estopped from relying on the Virus Exclusion to deny coverage because the Virus Exclusion was fraudulently adopted. Plaintiffs claim that the Virus Exclusion was first permitted by state insurance departments "due to misleading and fraudulent statements by the ISO or AAIS that property insurance policies do not and were not intended to cover losses caused by viruses." Compl. ¶ 39. Without relying on any facts, Plaintiffs assert that a *potential* regulatory estoppel argument merits further investigation and renders dismissal at this stage inappropriate. Plaintiffs believe that at the pleading stage it is sufficient to show that Twin City may have once paid claims based upon loss or damage from viruses and that that position is contrary to both the one it is taking now and the one it took before regulators.

The Court's job at this stage is to determine whether Plaintiffs' Amended Complaint can survive Twin City's motion to dismiss by containing sufficient factual matter, accepted as true, to state a plausible claim to relief. *Zuber*, 871 F.3d at 258 (quotation omitted). Regulatory estoppel "prohibits parties from switching legal positions to suit their own ends." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1192 (2001). If an insurer represented to a regulatory agency that new language in a policy would not result in decreased coverage, the insurer

cannot assert the opposite position when insureds raise the issue in litigation. *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010). To establish regulatory estoppel, Plaintiffs must allege that the Twin City made a statement to a regulatory agency and later adopted a position contrary to the one presented to the regulatory agency. *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008).

Plaintiffs satisfy neither element. The Amended Complaint avers that "in seeking approval from the Pennsylvania Insurance Department … Twin City or its agents … represented that the adoption of the virus exclusion would not change the scope of ... coverage because claims arising from a virus or similar contaminations already were not covered under the pre-existing policy language." Compl. ¶ 37. Plaintiffs claim that that assertion was incorrect, as prior to the adoption of the virus exclusion, claims for damage or loss relating to viruses or other contaminants that did not necessarily cause a physical alteration of the premises of the insureds were not automatically excluded from coverage. Compl. ¶ 38.

However, these statements do not contain sufficient factual matter to raise the Plaintiffs' right to relief above "speculation." *Twombly*, 550 U.S. at 555. Plaintiffs fail to aver that Twin City itself made any specific statements, or that its agents, including the Insurance Service Office or American Association of Insurance Services, when presenting its case to state regulatory agencies, actually presented on

21

Twin City's behalf. *See Handel*, 2020 WL 6545893, at *4 (finding that plaintiff satisfied the first element where it averred that an insurer's agent presented to state regulatory agencies in 2006 on behalf of multiple insurers, *including defendant*, to include a virus exclusion in insurance policies). Plaintiffs have not alleged that Twin City is now contradicting earlier statements because it did not identify any actual statements made by Twin City or agents acting on their behalf to state regulatory agencies. Plaintiffs have also not identified any claims where coverage was allowed prior to the adoption of the Virus Exclusion which would be denied today. Since Plaintiffs have not pleaded facts to satisfy the requisite elements, the doctrine of regulatory estoppel does not apply to this action. *Kessler v. Dentists' Ins. Co.*, No. 20-3376, 2020 WL 7181057, at *3 (E.D. Pa. Dec. 7, 2020).

### C. Leave to Amend

The Court should give plaintiffs leave to amend their complaint where justice so requires. Fed. R. Civ. P. 15(a)(2). But where leave to amend would be futile, denial of leave to amend is appropriate. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). The Court will not grant Plaintiffs leave to amend their Amended Complaint because Plaintiffs can allege no facts related to their Policies, their losses, or the reasons for their losses that could bring their claims within the coverage of the Policies.

### V.   Conclusion

For the foregoing reasons, Plaintiffs are not entitled to coverage for the losses they have suffered. Their claims for breach of contract and declaratory relief will be dismissed with prejudice as to Plaintiffs Zagafen, Tavern, Vintage Kosher, and Pagano's, and without prejudice as to the putative class.

**Date:** 1/14/2021                 **BY THE COURT:**

                                             **/s/ Chad F. Kenney**

                                             **CHAD F. KENNEY, JUDGE**